2001 OK 6

**In the Matter of the UNBORN CHILD OF Julie STARKS.**

**Amended In The Matter of J.B.C., Julie Starks, Appellant,**

v.

**State of Oklahoma, Appellee.**

**No. 94,104.**

Supreme Court of Oklahoma.

Jan. 23, 2001.

Barbara A. Teichner, Tulsa, Oklahoma, Michael W. McCoy, Broken Arrow, OK, For Appellant Julie Starks.

James W. Ely, Jr., Assistant District Attorney, Jenny Sanbrano, Legal Intern, Rogers County, Claremore, OK, For Appellee State of Oklahoma.

WINCHESTER, J.

¶1 This court retained the instant appeal to settle the first impression question whether a fetus is a "child" for purposes of the Oklahoma Children's Code, codified at 10 O.S.Supp.2000, § 7001 *et seq.* We are asked to determine whether the trial court committed reversible error by concluding the Oklahoma Children's Code provided an avenue for it to take temporary emergency custody of appellant's fetus and we answer this question in the affirmative. We vacate the order of the trial court and remand with instructions to dismiss.

**FACTS AND PROCEDURAL HISTORY**

¶2 On August 23, 1999, appellant Julie Starks and a Jimmy Ravon Cook, by whom appellant was impregnated, were arrested for manufacture and possession of methamphetamine. This alleged conduct became the subject of a criminal case in Rogers County District Court, styled CF 99 325. On the date of her arrest, appellant was approximately seven months pregnant. The trial court set bond for Jimmy Ravon Cook in the amount of twenty-five thousand dollars ($25,000.00) and raised the bond for appellant from that initial amount to two hundred thousand dollars ($200,000.00) on August 24, 1999.

¶3 On its own motion and prior to a petition being filed by the district attorney, the trial court brought appellant before it for an emergency hearing during which appellant was without counsel. This emergency juvenile custody proceeding occurred on August 26, 1999. When the proceeding concluded, the trial court took temporary emergency custody of appellant's viable fetus under 10 O.S.Supp.2000, § 7003–2.1. The record reveals that the court took this action based upon its belief appellant's fetus potentially would be harmed if appellant were released from jail, because appellant might engage in an activity that involved methamphetamine. The court minute also reflects that if appellant was released from the Rogers County jail, she "may" be placed in a foster home until the birth of her child. The record establishes that the acts upon which the trial court premised its adjudication of appellant's

fetus as "deprived," occurred on the date of appellant's arrest, to-wit: August 23, 1999.

¶ 4 The court denied appellant's Motion to Vacate Emergency Custody Order on August 30, 1999. The juvenile minute order reflects the previous court order that granted emergency custody of the fetus to the Department of Human Services and ordered appellant's placement in foster care if she posted her two hundred thousand dollar ($200,000.00) bond, remained in effect. On that same date, the Rogers County District Attorney filed a petition alleging appellant's fetus was a "deprived child" under the Oklahoma Children's Code.

¶ 5 On September 2, 1999, the court found that custody of appellant's fetus should remain with the Department of Human Services and that if appellant was released from jail, she was to report her whereabouts to child welfare. The court also denied appellant's motion to dismiss.

¶ 6 Following the trial court's refusal to lower appellant's bond, we granted her writ of habeas corpus on September 23, 1999, wherein we found the order that set bond at two hundred thousand dollars ($200,000.00) and ordered appellant's confinement to take place in a secure birthing facility, to be inefficacious and unenforceable as an unauthorized application of judicial force. We left in effect the earlier order of the trial court that set the appearance bond for appellant at twenty-five thousand dollars ($25,000.00).

¶ 7 On September 29, 1999, the trial court held a hearing on the State of Oklahoma's motion to clarify and motion to compel appellant to comply with the court's previous order. At the time of this hearing, appellant still was incarcerated in the Rogers County jail. The record reflects that the trial court continued to order custody of appellant's fetus with the Department of Human Services on an emergency basis. The court also ordered that appellant complete a drug and alcohol assessment within five days of her release from jail, disclose her living quarters for inspection within twenty-four hours of any residence change, submit to random urine analyses as arranged by the Department of Human Services and participate in pre-natal visits at least one time per week.

¶ 8 Appellant's infant, J.B.C., was born on November 2, 1999. On November 3, 1999, the day after J.B.C.'s birth, the court entered an order placing emergency custody of J.B.C. with the Department of Human Services. On November 12, 1999, the Rogers County District Attorney filed an amended petition alleging J.B.C. to be a "deprived child" under the Oklahoma Children's Code, based solely upon appellant's conduct on the date of her arrest, August 23, 1999.

¶ 9 On November 15, 1999, the trial court again denied appellant's motion to dismiss and a jury trial on the issue of deprivation commenced. On November 16, 1999, the jury reached a verdict finding J.B.C. deprived under the guidelines set forth in the Oklahoma Children's Code. The trial court continued to base the adjudication of the deprivation issue on conduct of appellant that occurred on the date of her arrest, August 23, 1999. There was no evidence presented and no allegation made that appellant acted in a manner to cause J.B.C. to be deprived after birth or after the day of her arrest. The trial court issued a Journal Entry of Adjudication filed November 24, 1999, wherein it found J.B.C. deprived and further found efforts to prevent his removal from the home were not made because removal was due to an emergency and was necessary for J.B.C.'s safety and the protection of the public.

¶ 10 On December 13, 1999, the trial court held a dispositional hearing during which it received evidence and testimony. At the conclusion, the trial court ordered J.B.C. to remain in the custody of the Department of Human Services with the mother as caretaker and visitation allowed to the father. At the time of this hearing, the record indicates appellant expressed a desire to move from her aunt's home to another residence. The court did not object to the request, pending approval of her living quarters by the Department of Human Services Child Welfare Division.

¶ 11 On appeal, appellant argues the trial court lacked subject matter jurisdiction to assume custody of her fetus under the Oklahoma Children's Code, codified at 10 O.S.Supp.2000, § 7001–1.1 et seq. She also

asserts the trial court lacked personal jurisdiction for all custody orders entered. In addition, she argues the trial court violated her right to privacy and autonomy, substantive and procedural due process, equal protection based on gender and right to travel. She also argues the court violated the separation of powers doctrine and improperly conducted voir dire by rejecting appellant's questions concerning whether potential jurors were predisposed on the issue of pregnant women who used alcohol and drugs.

## STANDARD OF REVIEW

¶ 12 The trial court's determination regarding the remedial rubric of the Oklahoma Children's Code is a legal ruling and our review is *de novo*. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley v. Brown,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456, n. 30. The sole issue we address on appeal is whether the term "child," as set forth in the Oklahoma Children's Code, 10 O.S.Supp. 2000, § 7001 *et seq.*, includes a fetus. Our determination of this issue is dispositive of the case at bar, and is premised solely upon independent issues of state law and not upon federal constitutional considerations. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

¶ 13 Appellee argues that because appellant's fetus arguably was viable, the state had a duty under the Oklahoma Children's Code to intervene on its behalf to protect it from harm. The state cites no Oklahoma authority, statutory or case law, in support of this proposition. Nor does it provide us with evidence of legislative intent to so interpret the Children's Code. Appellee argues since a fetus may be the subject of homicide and its biological parents may recover monetary damages for its wrongful death, we should afford a fetus the same protection given to a child under the Oklahoma Children's Code. We disagree.

¶ 14 The Oklahoma Court of Criminal Appeals held in *Hughes v. State,* 1994 OK CR 3, 868 P.2d 730, 736:

" ... we reject the born alive rule and hold that a viable human fetus is a 'human being' against whom a homicide as defined in Section 691 may be committed."

The Court in *Hughes* correctly reasoned medical science may provide proof regarding whether the fetus was alive at the time of a defendant's action and whether the action was the cause of death. 868 P.2d at 732. However, medical science cannot provide evidence regarding whether a fetus might be emotionally, mentally, physically or intellectually deprived within the definitions of terms contained in the Oklahoma Children's Code. Such evidence cannot be obtained until after the birth of a child. Although a fetus may be a "human being" under Oklahoma's criminal law, it is not a "child" under the Oklahoma Children's Code. The set of "human beings" contains at least three subsets, to-wit: adults, fetuses and children, only the latter of which is protected by the Children's Code.

¶ 15 Similarly, our decision pertaining to recovery for the wrongful death of a fetus as discussed in *Evans v. Olson,* 1976 OK 64, 550 P.2d 924, and its progeny, including our more recent holding in *Nealis v. Baird,* 1999 OK 98, 996 P.2d 438, wherein we extended our holding in *Evans* to a nonviable fetus that was born alive, does not necessitate that we extend the protections set forth in the Oklahoma Children's Code to fetuses. In the instance of a wrongful death action for the loss of a nonviable fetus born alive, the recovery is predicated on our holding that the word "one" as used by the legislature in the wrongful death statute, is synonymous with the word "person." *Nealis,* 1999 OK 98, ¶ 35, 996 P.2d at 452, citing *Evans v. Olson,* 1976 OK 64, ¶ 10, 550 P.2d 924, 928. We reasoned in *Nealis* that "once live birth occurs, the debate over whether the fetus is or is not a person ends and the live born child attains the legal status of 'one.' " *Nealis,* 1999 OK 98, ¶ 37, 996 P.2d at 452. As such, we found nothing in the language or intent of Oklahoma's wrongful death statute to prohibit its application to a nonviable fetus born alive. 1999 OK 98 at ¶ 40, 996 P.2d at 454. Its application proved to be an extension of the common law to adapt to present day life. Such is not the case when we consider the

Oklahoma Children's Code. We find nothing in the language or intent of the Children's Code to support its application to a fetus, viable or nonviable, and the statutory scheme itself did not evolve from the common law.[1]

## LEGISLATIVE INTENT

¶ 16 The intent of the legislature controls when interpreting statutes. *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board of County Commissioners of Tulsa County,* 1988 OK, ¶ 10, 959 P.2d 979, *reh'g. denied,* (June 30, 1998), *appeal after remand,* 2000 OK 2, 995 P.2d 1124.[2] Section 7001–1.3(4) defines the word "child" as follows:

" 'Child' means any person under eighteen (18) years of age except any person convicted of a crime specified in Section 7306–1.1 of this title or any person who has been certified as an adult pursuant to Section 7303–4.3 of this title and convicted of a felony."

In addition, Section 7001–1.3 contains definitions for "Child in need of mental health treatment," § 7001–1.3(5); "Child with a disability," § 7001–1.3(6); "Child-placing agency," § 7001–1.3(7). The legislature's choice to define and include these phrases within the ambit of the Oklahoma Children's Code makes it abundantly clear that it intended the Code to apply to those human beings who have been born and who are under the age of eighteen. No fetus could be in need of mental health treatment, and no fetus could be placed through child placement services. These terms apply only to those who are born, living outside the womb of the mother.

¶ 17 Similarly, the definitions pertaining to "deprived child" under § 7001–1.3(14) could

---

1. The weight of authority supports our decision to disallow intervention to protect a fetus, even from maternal drug abuse during gestation. Appellant's brief cites no less than sixteen states that disallow such intervention. The Florida Court of Appeals held Florida's child abuse statute did not reach a fetus and therefore the defendant could not be prosecuted for child abuse based on the introduction of cocaine into her own body during the gestation period of her unborn. *State v. Gethers,* 585 So.2d 1140, 1142 (Fla.App. 4 Dist.1991). Similarly, the Arizona Court of Appeals held in *Reinesto v. Superior Court,* 182 Ariz. 190, 894 P.2d 733, 735 (App. Div. 1 1995) that applying the ordinary meaning of the plain language of Arizona's child abuse statute refers to conduct that directly endangers a child, not to an activity that affects a fetus and thereby ultimately harms the resulting child. Therefore, the court held the defendant could not be prosecuted based on her use of heroin during pregnancy. The California Court of Appeals held in *Reyes v. Superior Court,* 75 Cal.App.3d 214, 141 Cal.Rptr. 912, 913 (1977) that the word "child" in the California child endangerment statute was not meant to include a fetus, and the Kentucky court held in *Comm. v. Welch,* 864 S.W.2d 280, 285 (Ky.1993) that the offense of criminal child abuse did not extend to the defendant's use of drugs while pregnant. The Nevada Supreme Court, interpreting a Nevada statute for willful endangerment to a child, concluded "that prosecuting a mother for the delivery of a controlled substance to her child through the umbilical cord is a strained and unforeseen application of [the statute]." *Sheriff, Washoe County, Nev. v. Encoe,* 110 Nev. 1317, 885 P.2d 596, 598 (1994).

Texas courts confronted prenatal substance abuse in *Collins v. State,* 890 S.W.2d 893, 895 (Tex.App.—El Paso 1994, no pet.)(*declined to follow* as applicable to Texas' intoxication manslaughter statute in *Cuellar v. State,* 957 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1997)). The Texas court reasoned "the legislature, by its definitions of 'child,' 'person,' and 'individual,' has specifically limited the application of [Texas'] penal laws to conduct committed against a human being who has been born and is alive." 890 S.W.2d at 897–98. Consequently, the defendant's ingestion of cocaine during her pregnancy was not a crime at the time it was committed. 890 S.W.2d at 898. The Michigan Court of Appeals also held a parent may not be prosecuted for child endangerment from substance abuse occurring before the birth of the child. *People v. Hardy,* 188 Mich.App. 305, 469 N.W.2d 50 (1991), *appeal denied, People v. Hardy,* 437 Mich. 1046, 471 N.W.2d 619 (1991).

2. It is presumed that the law-making body has expressed its intent in a statute and that it intended what it so expressed. *TXO Production Corp. v. Okl. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969. Rules of statutory construction are employed only when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity or conflict with other statutes. *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468. The primary goal of rules of statutory construction is to ascertain the legislature's intent. *Ledbetter v. Alcoholic Bev. Laws Enforcement,* 1988 OK 117, ¶ 7, 764 P.2d 172, 179. Such intent must be gleaned from the statute in view of its general purpose and object. *TXO Production Corp.,* 1992 OK 39 at ¶ 7, 829 P.2d at 968. In the instant case, statutory construction is unnecessary because the legislature's intent can be ascertained from the plain language of the Oklahoma Children's Code.

not apply to a fetus. Such an interpretation of the statute is nonsensical. Section 7001–1.3(14) states, in part, the following:

" 'Deprived child' means a child:

a. who is for any reason destitute, homeless, or abandoned,

b. who does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of the child's parents, legal guardian, or other person responsible for the child's health or welfare,

c. who is a child in need of special care and treatment because of the child's physical or mental condition including, but not limited to, a child **born** in a condition of dependence on a controlled dangerous substance, and the child's parents, legal guardian, or other custodian is unable or willfully fails to provide such special care and treatment,

d. who is a child with a disability deprived of the nutrition necessary to sustain life or of the medical treatment necessary to remedy or relieve a life-threatening medical condition in order to cause or allow the death of the child if such nutrition or medical treatment is generally provided to similarly situated children without a disability or children with disabilities; provided that no medical treatment shall be necessary if, in the reasonable medical judgment of the attending physician, such treatment would be futile in saving the life of the child,

e. who is, due to improper parental care and guardianship, absent from school as specified in Section 10–106 of Title 70 of the Oklahoma Statutes, if the child is subject to compulsory school attendance, or

f. whose parent or legal custodian for good cause desires to be relieved of custody."

(Emphasis added.)

Additional definitions include "Dispositional hearing," "Emergency custody," "Facility," "Foster care," "Foster child," "Group home," and "Residential child care center." Not one of these terms applies to a fetus. Although appellee argues the Children's Code should apply to viable fetuses, it fails to provide a rationale under which to do so.

¶ 18 When the legislature intends to refer to a fetus or to a pregnant woman, it does so specifically. *See, e.g.,* 43A O.S.Supp. 2000, § 3–417 (wherein the legislature refers to "specific physical facility standards providing for facilities that provide substance abuse treatment services to pregnant women and women with children when the children also reside at the facility"); 56 O.S.Supp.2000, § 206 (C), entitled "Medical assistance program for infants and certain pregnant women and postpartum women," (wherein the legislature specifically refers to a "fetus" as distinguished from an "infant" or "child"); 43 O.S.Supp.2000, § 551–102, Uniform Child Custody Jurisdiction and Enforcement Act (wherein the legislature defines "child" to mean an individual who has not attained eighteen (18) years of age and further states in regard to a child's "home state," that the term "means the state in which the child lived from birth with the parent or person acting as a parent"); 63 O.S.Supp.2000, § 1–730 (wherein the legislature defines "unborn child" as "the unborn offspring of human beings from the moment of conception, through pregnancy, and until live birth including the human conceptus, zygote, morula, blastocyst, embryo and fetus"); 63 O.S.Supp. 2000, § 1–319 (wherein the legislature distinguishes a dead body from a fetus, for purposes of the final disposition of the body or fetus in the state of Oklahoma); 63 O.S.Supp. 2000, § 1–318 (wherein the legislature provides for a fetal death certificate for a fetus). The legislature uses "fetus" to denote an unborn human being and "child" to denote a born human being. It does not consider these terms to be interchangeable. It further distinguishes between the term "fetus" and "viable fetus" when it intends to refer to either. *See, e.g.,* 63 O.S.Supp.2000, § 1–732 (entitled "Viable fetus-Grounds to abort-Procedure" and states in section (B), "An unborn child shall be presumed to be viable if more than twenty-four (24) weeks have elapsed since the probable beginning of the last menstrual period of the pregnant woman, based upon either information provided by her or by an examination by her attending physi-

cian.") If the legislature had intended the Children's Code to apply to a fetus or to a pregnant woman, it would have used those specific terms and in so doing, unequivocally manifested such intent, as in the statutory sections cited hereinabove.

## CONCLUSION

¶ 19 The Oklahoma Children's Code does not apply to a fetus, viable or nonviable. The state fails to present any fact or inference from facts to support legislative intent that it so apply. We vacate the orders of the trial court and remand with instructions to dismiss the instant matter because the facts adduced fail to show the case is remedial under the Oklahoma Children's Code. Since we reach this conclusion, we need not examine the other issues raised by appellant, as these would not afford her additional relief on appeal.

**ORDER OF THE TRIAL COURT VACATED; CASE REMANDED WITH INSTRUCTIONS TO DISMISS.**

¶ 20 HARGRAVE, C.J.; WATT, V.C.J.; HODGES, OPALA, KAUGER, SUMMERS, and BOUDREAU, JJ., concur.

¶ 21 LAVENDER, J., disqualified.