**Jennifer Nicole WALTENBURG, Appellant**

v.

**Sean WALTENBURG, Appellee.**

**No. 05–06–01688–CV.**

Court of Appeals of Texas, Dallas.

Nov. 14, 2008.

---

Ronald W. Uselton, Sherman, for Appellant.

Sean Waltenburg, Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, for Appellee.

Before Justices MOSELEY, FRANCIS, and LANG.

## OPINION

Opinion by Justice MOSELEY.

Jennifer Nicole Waltenburg (Mother) filed suit in Grayson County seeking a divorce from Sean Waltenburg (Father) and custody and support determinations regarding their child, J.T.A.W. Father filed a plea in abatement, indicating that before J.T.A.W. was born, Father had filed suit for divorce and a custody determination in Maricopa County, Arizona. The trial court dismissed Mother's suit without prejudice, determining that the Arizona court had "continuing, exclusive jurisdiction" of the child-custody dispute. In a single issue on appeal, Mother asserts the trial court erred by dismissing her original petition for divorce; Mother's arguments, however, relate only to the dismissal of the child-custody dispute.

The outcome of this appeal hinges on whether, under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Arizona court had jurisdiction over a child-custody proceeding filed before the child was born. For the reasons expressed herein, we answer that question "no," and conclude the trial court erred by dismissing Mother's suit affecting the parent-child relationship. We reverse that portion of the trial court's order and remand the case to the trial court to determine the child-custody dispute. We affirm the trial court's order in all other respects.

## BACKGROUND

We take the following facts primarily from Mother's original petition for divorce and the parties' briefs. Father and Mother married in 2005 and lived together in Arizona until February 2006. Mother moved out that month and, on or about March 17, 2006, moved to Texas. Four days later, on March 21, 2006, Father filed for divorce in Arizona; his suit included a request for custody of their unborn child. That child, J.T.A.W., was born in Texas in April 2006.

On August 23, 2006, Mother filed her original petition for divorce in Texas. She requested a division of the parties' estate, custody of J.T.A.W., and child support and medical support. Father responded by filing a plea in abatement based on the previously-filed Arizona suit. He specifically alleged that the Arizona case was still pending; that the issues and parties in the Arizona case were the same as in Mother's Texas case; and that neither he nor Moth-

er met the domiciliary and residency requirements for filing the Texas suit. He requested that the Texas case be dismissed.[1]

The trial court held a telephone conference with the Arizona court. There is no reporter's record of this telephone conference. Thereafter, on December 8, 2006, the trial court signed its Order on Respondent's Plea in Abatement and Order of Dismissal. The order stated, in part, that the court had considered the plea in abatement and determined that the Arizona court "has continuing, exclusive jurisdiction of this case as provided for by section 155.002 of the Texas Family Code." The trial court dismissed Mother's case without prejudice.[2] The trial court denied Mother's motion for new trial. This appeal followed.

## STANDARD OF REVIEW

[1–5] Subject matter jurisdiction is essential for a court to have authority to decide a case; it is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). *See Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex.) (per curiam) (subject matter jurisdiction cannot be waived and can be raised at any time), *cert. denied*, 77 U.S.L.W. 3088 (2008). In reviewing an order of dismissal for want of jurisdiction, we construe the pleadings in favor of the pleader and look to the pleader's intent. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Whether a pleader has alleged facts that affirmatively demonstrate subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks &*

*Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). In performing this review, we do not look to the merits of the case, but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *Id.; County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). When, as here, there is no reporter's record and findings of fact and conclusions of law are neither properly requested nor filed, the judgment of the trial court implies all necessary findings of fact to sustain its judgment. *Ette v. Arlington Bank of Commerce*, 764 S.W.2d 594, 595 (Tex.App.-Fort Worth 1989, no writ).

We review the trial court's interpretation of applicable statutes de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex.2002). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). We first look at the statute's plain and common meaning, and we presume the legislature intended the plain meaning of its words. *Id.* If possible, we must ascertain that intent from the language the legislature used in the statute, and we do not look to extraneous matters for an intent the statute does not state. *Id.*

## APPLICABLE LAW

Both Texas and Arizona have enacted the UCCJEA. *See* TEX. FAM.CODE ANN. §§ 152.001–.317 (Vernon 2002 & Supp. 2008); ARIZ.REV.STAT. §§ 25–1001–25–1067 (2008).[3] Texas adopted the UCJEA in 1999, replacing the previously

---

1. Father also filed a special appearance, the effect of which will be discussed herein.

2. The order also dismissed, without prejudice, a plea in intervention filed by the Office of the Attorney General (OAG). The OAG did not appeal.

3. The corresponding provisions of the Arizona act are substantially identical to the Texas provisions.

adopted Uniform Child Custody Jurisdiction Act (UCCJA). *Powell v. Stover,* 165 S.W.3d 322, 325 (Tex.2005) (orig.proceeding). The legislature's intent in passing the UCCJEA was, at least in part, to prioritize home-state jurisdiction in child-custody cases. *See id.*[4]

Texas Family Code section 152.201(a) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." TEX. FAM.CODE ANN. § 152.201(b) (Vernon 2002); *Seligman–Hargis v. Hargis,* 186 S.W.3d 582, 585 (Tex.App.-Dallas 2006, no pet.). Section 152.201(a) provides, in pertinent part, that a court of this state has jurisdiction to make an initial child-custody determination only if one of four circumstances is present:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 [Inconvenient Forum] or 152.208 [Jurisdiction Declined by Reason of Conduct], and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAM.CODE ANN. § 152.201(a)(1)-(4) (Vernon 2002); *Powell,* 165 S.W.3d at 325. *See In re Brilliant,* 86 S.W.3d 680, 685 (Tex.App.-El Paso 2002, no pet.). *See also* TEX. FAM.CODE ANN. §§ 152.102(4) ("child custody proceeding" includes proceeding for divorce), .102(8) ("initial determination" means the first child-custody determination concerning a particular child) (Vernon 2002). "Physical presence of, or personal jurisdiction over, a party or a child is not

---

**4.** The supreme court's opinion in *Powell,* 165 S.W.3d at 325, succinctly summarized this legislative intent:

The UCCJA provided four bases for jurisdiction over a custody dispute, but did not prioritize one over the others. Act of May 2, 1983, 68th Leg., R.S., ch. 160, § 1, 1983 Tex. Gen. Laws 691, 693–94 (as amended), repealed by Act of Apr. 22, 1999, 76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52, 64–65. This often led courts in different states to simultaneously exercise jurisdiction in child-custody cases. The UCCJEA was designed, in large part, to remedy this situation by prioritizing home-state jurisdic-

tion. [Kelly G.] Stoner, *The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA),* 75 N.D. L.REV. 301, 313 (1999); House Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B. 797, 76th Leg., R.S. (1999) (stating that "this Act revises the child custody jurisdiction law to prioritize home state jurisdiction"); *see In re Forlenza,* 140 S.W.3d [373] at 374–75 [ (Tex. 2004) ] (discussing the UCCJEA in the context of continuing jurisdiction over custody matters). The Texas Family Code accordingly prioritizes home-state jurisdiction. . . .

necessary or sufficient to make a child custody determination." Tex. Fam.Code Ann. § 152.201(c).

We determine jurisdiction based upon the circumstances as they existed on the date suit was filed. *See In re Burk*, 252 S.W.3d 736, 740 (Tex.App.-Houston [14th Dist] 2008, orig. proceeding [mand. denied] ); *In re McCoy*, 52 S.W.3d 297, 304 (Tex.App.-Corpus Christi 2001, orig. proceeding [mand. denied] ) (operative date for determining whether Texas has jurisdiction is date suit was filed in Texas). The child's home state is determined as of the date of the commencement of the child-custody proceeding. *See In re Brown*, 203 S.W.3d 888, 891 (Tex.App.-Fort Worth 2006, orig. proceeding).[5] As applicable here, in the case of a child less than six months of age, "home state" means "the state in which the child lived from birth with a parent. . . ." Tex. Fam. Code Ann. § 152.102(7).

Simultaneous proceedings are addressed in section 152.206. As relevant here, it provides that

> a court of this state may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under section 152.207.

*Id.* § 152.206(a) (Vernon 2002). The purpose of this section is "to deal with situations where a Texas court and a court of another state are both legitimately exercising jurisdiction at the same time." *In re McCoy*, 52 S.W.3d at 305.

## MOOTNESS OF THIS APPEAL

In his brief on appeal and in a separate motion to dismiss this appeal, Father asserts that the Arizona court has signed a final decree of divorce, including a decision on the child-custody issues.[6] Based on this decree, Father argues this appeal is moot and this Court should recognize the Arizona decree under the doctrine of comity and dismiss this appeal for lack of jurisdiction. Mother's response to the motion does not dispute whether the Arizona court has entered a judgment. However, she states that the central issue on appeal is whether, when Mother filed her petition in Texas, the Arizona court already had subject matter jurisdiction over the child-custody issues. Absent that jurisdiction, the Arizona judgment is void as to custody issues.

"The lack of comity with respect to custody decrees of other states is

---

**5.** "Commencement" is defined as "the filing of the first pleading in a proceeding." Tex. Fam.Code Ann. § 152.102(5).

**6.** In the appendix to his brief and as an attachment to his motion, Father included what he describes as a certified copy of the Arizona court's final judgment, which states that it was "done in open court" on May 22, 2007. The document appears to be a photocopy of the "Judgment and Decree of Dissolution of a Covenant Marriage with Child" from the Superior Court of Arizona, Maricopa County, in cause number FC 2006–002145, styled *In re the Marriage of Sean Waltenburg & Jennifer N.*

*Waltenburg.* The document is stamped "COPY FOR CERTIFICATION." A file stamp indicates it was filed with the clerk on June 15, 2007; below the file stamp is the handwritten statement "duplicate filed as original per Judge Jeffrey A. Hotham." The judge's name is stamped on the signature line of the last page. There is no other attesting or certifying language on or attached to the document, and it is not included in and was not made a part of the appellate record. It was signed well after the trial court dismissed the Texas case and after this appeal was filed.

a mischief the law [that is, the UCCJA] was enacted to remedy." *Greene v. Greene*, 432 So.2d 62, 65 (Fla.Dist.Ct.App. 1983). By adopting the UCCJA (and, subsequently, the UCCJEA), the legislature "has effectively commanded the courts to defer to a sister state which has already correctly assumed jurisdiction in a child custody case *when that other state exercises its jurisdiction in a fashion consistent with the Act." Id.* (emphasis added). We agree with the logic set forth by the Florida court in *Greene.*

■ Under the Texas UCCJEA, Texas courts must recognize and enforce initial custody decrees of other states provided that either the other court exercised jurisdiction under statutory provisions substantially in accordance with the Texas UCCJEA, or the determination was made under factual circumstances meeting the jurisdictional standards of the Texas UCCJEA and the determination has not been modified. *See* Tex. Fam.Code Ann. §§ 152.102(3) (defining "child custody determination"), 152.303(a) ("duty to enforce") (Vernon 2002); *In re Y.M.A.*, 111 S.W.3d 790, 792–94 (Tex.App.-Fort Worth 2003, no pet.) (applying section 152.201(a)(1) to determine Egypt was child's home state and enforcement provisions). This issue of subject matter jurisdiction is the issue Mother is asserting on appeal.

■ Additionally, whether Arizona or Texas had subject matter jurisdiction to make an initial custody decision as to J.T.A.W. is determined on the pleadings of the parties and the undisputed evidence as to the date and location of J.T.A.W.'s birth. In contrast, extending deference to a foreign judgment on comity grounds is an enforcement matter, which would raise evidentiary issues concerning registration and authentication of the Arizona divorce decree. There is no enforcement issue before this Court.[7] We reject Father's argument that the mere existence of the Arizona divorce decree that includes child custody issues moots this appeal.

## DISCUSSION

■ Mother's petition stated that J.T.A.W. was born in Texas on April 7, 2006, and presently (that is, as of August 23, 2006) resided with her. Father's brief states the same birthday and that the child was born in Texas. It also states that the child has resided in Arizona "since shortly after the signing of [the Arizona] Order." Father asserts the Arizona order was signed in May 2007. Thus, the parties do not dispute that J.T.A.W. lived in Texas from birth until Mother filed her petition on August 23, 2006; certainly there is no evidence to the contrary. Therefore, Texas was J.T.A.W.'s home state on the date that Mother filed the Texas suit. *See* Tex. Fam.Code Ann. § 152.102(7) (when child is less than six months old, "home state" means "the state in which the child lived from birth with a parent"). Accordingly, the Texas court had jurisdiction to make

---

7. Under the UCCJEA, the first step in enforcing an out-of-state child-custody decree is registering the decree in Texas. *See* Tex. Fam. Code Ann. § 152.305 (Vernon 2002). After the decree is registered, a Texas court may grant any relief normally available under Texas law to enforce it. *See id.* § 152.306(a). *See also H. Heller & Co. v. La.-Pac. Corp.*, 209 S.W.3d 844, 849 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (under Uniform Enforcement of Foreign Judgments Act, considering application of principles of comity and full faith and credit to out-of-state judgments and describing procedure of making a prima facie case for enforcement by presenting a "final, valid, and subsisting judgment," after which burden shifts to other party to prove by clear and convincing evidence that foreign judgment should not be given full faith and credit).

an initial child-custody determination regarding J.T.A.W. *See id.* § 152.201(a)(1).

### Simultaneous Proceedings

Despite having that jurisdiction, however, the Texas court may not exercise its jurisdiction if, when Mother filed her suit in Texas, a "proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with [Chapter 152]...." *Id.* § 152.206(a). Again, we determine jurisdiction as of the date suit was filed. *See In re Burk,* 252 S.W.3d at 740; *In re McCoy,* 52 S.W.3d at 304. *See also Welch–Doden v. Roberts,* 202 Ariz. 201, 42 P.3d 1166, 1173–74 (2002) (same and citing *In re McCoy,* 52 S.W.3d at 303–04). Thus, the issue before us is whether, on the date Father filed his suit in Arizona, that court had jurisdiction "substantially in conformity with [chapter 152]." Tex. Fam.Code Ann. § 152.206(a).

Father indicates this issue is one of first impression in Texas (and in Arizona) and argues that the UCCJEA does not apply to an unborn child. Rather, the prior Arizona judgment must be given effect based on comity. As a result, he asserts the trial court properly dismissed Mother's Texas suit.

■■■ We agree with Father only to the extent he argues that the UCCJEA in general, and the versions of the UCCJEA enacted in Texas and Arizona in particular, do not authorize jurisdiction over a child custody proceeding concerning an unborn child. The plain language of the UCCJEA's definition of a child as "an individual who has not attained 18 years of age"—adopted in chapter 152 of the Texas Family Code—does not include an unborn

child. *See* Tex. Fam.Code Ann. § 152.102(2) (Texas version of UCCJEA).[8]

Cases from other jurisdictions also support this conclusion. In *Arkansas Department of Human Services v. Cox,* 349 Ark. 205, 82 S.W.3d 806, 812–13 (2002), the Arkansas Department of Human Services (DHS), under the authority of a Florida court order, seized a child born in Arkansas and, in disobedience of a subsequent Arkansas court order to return the child to her grandmother, delivered the child to Florida authorities. DHS argued the Arkansas court should have given full faith and credit to the Florida order to pick up the child. *Id.* at 808. The Arkansas Supreme Court disagreed, concluding that Florida did not have jurisdiction in substantial conformity with the UCCJEA because the UCCJEA did not apply to unborn children. *Id.* at 812–13 (citing UCCJEA's definition of "child").

Father also cites *Anselmo v. Anselmo,* No. FA000181708, 2001 WL 358851 (Conn.Super.Ct. Mar.28, 2001) (mem. op., not designated for publication). In that case, the husband filed suit in Connecticut seeking, among other relief, custody of his unborn child. He also filed suit seeking that relief in Texas where the pregnant wife lived. The wife asked the Connecticut court to enjoin the husband from pursuing the Texas action. *See id.* at *1. The court observed that where neither state could claim to be the child's home state, the "UCCJEA would seem to hold that ... Connecticut, not Texas ... should accept jurisdiction." *Id.* at *2 (citing "no other court has jurisdiction" statutory provision[9] in Connecticut version of UCCJEA). However, the court went on to cite the

---

**8.** The corresponding Arizona statute, section 25–1002(2), is substantially the same. *See* Ariz.Rev.Stat. §§ 25–1002(2), 1–215(6) (2008).

**9.** That provision corresponds to section 152.201(a)(4) of the Texas Family Code. *See* Tex Fam.Code Ann. § 152.201(a)(4).

statutory definition of "home state" as the state in which a child lived, and stated:

> [T]he definition section of the [Connecticut UCCJEA] apparently limits the application of the law to situations following the birth of the child. . . . If that is the case, the question becomes on what basis can this court, or any court for that matter, accept jurisdiction regarding custody of an unborn infant.

*Id.* (statutory citation omitted).[10] Ultimately the court granted the injunction, holding that a stipulation of the parties "constitutes a waiver of either party's right to now argue that issues regarding the unborn child are not properly before the court." *Id.*

Father also cites this court to *In re Unborn Child of Starks*, 18 P.3d 342, 347 (Okla.2001), in which the Oklahoma Supreme Court looked to the definition of "child" in the UCCJEA as showing a legislative intent to distinguish between born and unborn human beings in Oklahoma statutes. *See also In re Marriage of Tonnessen*, 937 P.2d 863, 865–66 (Colo.Ct.App. 1996) (when children born in Arizona and never lived in Colorado, jurisdiction over custody claim in Colorado divorce case filed before children born, held: not substantially in conformity with UCCJEA because jurisdiction never existed in Colorado).

We find the reasoning of *Cox, Anselmo,* and *In re Starks* supports our conclusion that the text of the UCCJEA precludes its application to unborn children. In contrast, we disagree with the logic set forth in *Gullett v. Gullett*, 992 S.W.2d 866 (Ky. Ct.App.1999). There, a child-custody suit was filed in Kentucky prior to the child's birth in Ohio. The court applied the "no other court has jurisdiction" statutory provision[11] in the Kentucky version of the UCCJEA, and held that Kentucky had jurisdiction because "no other state . . . appeared to have custody jurisdiction over the unborn child at the time the dissolution petition was filed." *Id.* at 870.[12] *Accord Stewart v. Vulliet*, 888 N.E.2d 761, 765–66 (Ind.2008). *Gullett* was not a case under the UCCJEA, and its language provides no rationale for avoiding the UCCJEA's statutory definition of a "child" as "an individual who has not attained 18 years of age." *See* TEX. FAM.CODE ANN. § 152.102(2) (Texas version of UCCJEA). Instead, *Gullett* assumed the answer to the jurisdictional question asked by the Connecticut court in *Anselmo*, and expressed no rationale for its determination that Kentucky had jurisdiction over a custody matter concerning an unborn child.

---

**10.** The Connecticut court went on to state:

This court looks to the United States Supreme Court for the answer. In the recent case of *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674, (1992), the court found that at all stages of a pregnancy, but in particular, after the point of viability is reached, the state has an interest in protecting the unborn infant. So much so that following viability, the state's interest overrides the long-established right of the mother to terminate the pregnancy. Here, the defendant wife is eight months pregnant, and the court, cognizant of the advances in medicine, and, in particular with regard to neonatal care, finds that the unborn child that she carries certainly would have viability outside the womb. . . .

*Anselmo,* 2001 WL 358851, at *2.

**11.** *See supra* note 9.

**12.** *Gullett* went on to note that upon the child's birth in Ohio, Kentucky and Ohio would have concurrent jurisdiction over child-custody issues, but that the Ohio concurrent jurisdiction statute (corresponding to section 152.206(a) of the Texas Family Code) would prevent Ohio from exercising that jurisdiction unless Kentucky stayed its case. *See Gullett,* 992 S.W.2d at 870.

**318**

Moreover, reading the UCCJEA to authorize jurisdiction over a custody matter concerning an unborn child would defeat the clear purpose underlying the legislature's enactment of the UCCJEA—to prioritize home-state jurisdiction. *See Powell,* 165 S.W.3d at 325. Under such a reading, a party could file suit pre-birth under the UCCJEA provision authorizing jurisdiction when "no other court has jurisdiction," and use the "simultaneous proceeding" provision to control, post-birth, whether the child's home state can ever exercise that "priority" jurisdiction. We reject this reading of the UCCJEA.

▮ Considering the circumstances as of the date Father filed the Arizona suit, we conclude that none of the four jurisdictional provisions of Arizona Revised Statutes section 25–1031(A) apply to give the Arizona court jurisdiction over Father's claim for custody of the unborn J.T.A.W. *See* Ariz.Rev.Stat. § 25–1031(A)(1)–(4). Thus, based on this Arizona statute and Texas Family Code section 152.201(a), we conclude that when Father filed for divorce in Arizona before J.T.A.W. was born, that court did not have jurisdiction over his custody claim "substantially in conformity with [chapter 152]." *See* Tex. Fam. Code Ann. § 152.206(a). Thus, we further conclude the simultaneous suit provision in section 152.206(a) did not apply to prevent the trial court from exercising its jurisdiction over Mother's custody claim in Texas.

Even if we determined the Arizona court's jurisdiction as of the date J.T.A.W. was born—instead of the date Father filed suit—our conclusion that the Arizona court lacked jurisdiction over Father's custody claim does not change. Immediately upon J.T.A.W.'s birth in Texas, Texas became his home state, thus precluding the Arizona court from exercising jurisdiction over Father's custody claim based on the Arizona statute analogous to section 152.201(a)(4) (the "no other court having jurisdiction" provision).

Thus, we agree with Father that the UCCJEA does not grant jurisdiction to child-custody claims involving unborn children. However, we disagree with Father's additional assertion that, as a result, we must affirm the trial court's judgment. To the contrary, because the UCCJEA does not apply to unborn children, and because those provisions of the UCCJEA enacted in Texas Family Code section 152.201(a) and Arizona Revised Statutes section 25–1031(A) are the "exclusive jurisdictional [bases] for making a child custody determination by a court" of those states, *see* Tex. Fam.Code Ann. § 152.201(b); Ariz. Rev.Stat. § 25–1031(B), we conclude that a court in a state that has adopted the UCCJEA cannot exercise jurisdiction over a custody claim asserted regarding an unborn child.[13] By adopting the "uniform" language of the UCCJEA, which does not authorize jurisdiction over a child custody claim concerning a child before its birth, Arizona precluded its courts from having jurisdiction over J.T.A.W.'s custody determination. Accordingly, comity does not require that Texas recognize a child custody determination that is not made in conformity with the UCCJEA uniform provisions.

*Inconvenient Forum*

▮ Section 152.207 provides that a Texas court, having jurisdiction under chapter 152 to make a child-custody determination, may decline to exercise its jurisdiction "if it determines that it is an incon-

13. Because our holding is based on the unambiguous text of the UCCJEA, as adopted in both Texas and Arizona, we need not rely on *Planned Parenthood of Southeastern Pennsylvania,* as the Connecticut court in *Anselmo* seemed to suggest.

venient forum under the circumstances and that a court of another state is a more appropriate forum." TEX. FAM.CODE ANN. § 152.207(a), (b) (Vernon 2002) (requiring information from parties and consideration of "all relevant factors," including certain specific factors).

In addition to his plea in abatement, Father also filed a special appearance, asserting that he was not subject to personal jurisdiction in a Texas court. However, in his special appearance he also requested the trial court, in the alternative

to decline jurisdiction or, alternatively, stay these proceedings on the condition that a custody proceeding will be promptly convened in Arizona because Texas is an inconvenient forum to make a custody determination under the circumstances in this case, and Arizona is a more appropriate forum for this custody determination and [Mother] has wrongfully taken the child from another state or has engaged in similar reprehensible conduct.

In Mother's brief, she recognizes that, even though the Texas court had jurisdiction over her custody claim, it could decline to exercise its jurisdiction on grounds it is an inconvenient forum under the circumstances and that another state court is a more appropriate forum. *See id.* § 152.207(a). However, she states that there is no documentation that the trial court considered the factors of forum non conveniens in its decision, and that the evidence is insufficient to sustain the trial court's judgment on that basis.

In response, Father states that the exact basis of the trial court's ruling is unknown because Mother failed to request and obtain findings of fact and conclusions of law from the trial court. Thus, Father asserts we must imply, in support of the trial court's judgment, that the trial court found that it should dismiss Mother's suit based on section 152.207. Further, he argues that Mother has waived any challenge to such a finding because she failed to bring forward a reporter's record of the telephone conference between the trial court judge and the judge of the Arizona court.

However, the trial court's order indicated only that it had considered and was ruling on Father's plea in abatement, not his special appearance. Though we will imply, absent findings of fact and conclusions of law, any findings necessary to support the trial court's judgment, we will not imply that the court's ruling is based on a ground not asserted in the motion on which the court stated it was ruling. Thus, any issues relating to section 152.207 are irrelevant to this appeal.

## CONCLUSION

We conclude that the record shows the Texas court had jurisdiction to make an initial child-custody determination regarding J.T.A.W. pursuant to section 152.201(a)(1) because Texas is the child's home state under section 152.102(7). We also conclude the Arizona court had no such jurisdiction because the UCCJEA, as enacted in Arizona, does not apply to an unborn child. *See id.* §§ 152.102(7), .201(a)(1); *In re Brown,* 203 S.W.3d at 891–92; *In re McCoy,* 52 S.W.3d at 305. Thus, we conclude the trial court erred by dismissing the Mother's suit affecting the parent-child relationship. We resolve Mother's issue in her favor. We reverse that portion of the trial court's December 8, 2006 order and remand this case to the trial court for further proceedings with respect to her child-custody claim. We affirm the trial court's order in all other respects.