THOMAS, Judge.
Kenneth Eugene Gray (“the father”) and Jenifer Lee Gray (“the mother”) were married in Florida in January 2009. They moved to Alabama in January 2010. On July 25, 2010, the mother left the marital residence and relocated to Michigan; she was pregnant with the parties’ child. The father filed an action in the Tallapoosa Circuit Court (“the Alabama trial court”) seeking a divorce from the mother on September 3, 2010. The mother delivered the parties’ child in Michigan on October 26, 2010.
On June 13, 2011, the mother filed a motion to dismiss the father’s action, alleging, among other things, that the Alabama trial court lacked jurisdiction to make a child-custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”), codified at Ala.Code 1975, § 30-3B-101 et seq. The mother submitted an affidavit in support of her motion to dismiss; she stated that she had left Alabama in July 2010, that the child had been born in Michigan, and that the child had never been to Alabama. After a hearing on the mother’s motion, the Alabama trial court denied her motion by order dated August 1, 2011. The mother filed a motion seeking reconsideration of the Alabama trial court’s denial of her motion to dismiss, which the Alabama trial court denied in November 2011.
The case proceeded to a trial in November 2012, at which the mother appeared only through counsel. Only the father testified at trial. According to the father, the mother had stolen certain items when she left the marital residence. He also stated that the mother was addicted to narcotic pain medication and opined that she was unfit to rear the parties’ child. Upon questioning by the mother’s counsel, the father admitted that he had sought mental-health treatment during the parties’ marriage and that he had, at one time, taken certain medications as a result; he did not state his diagnosis, and he said that he no longer took the medications. The Alabama trial court entered a judgment on November 19, 2012, in which it divorced the parties, awarded the parties joint legal custody of the child, awarded the mother physical custody of the child, awarded the father certain visitation privileges, and ordered the father to pay child support. The father filed a timely notice of appeal. He challenges the award of physical custody to the mother.
Neither party has raised the issue of this court’s jurisdiction over this appeal. However, because jurisdictional matters are of such magnitude, this court is permitted to notice a lack of subject-matter jurisdiction ex mero motu. See Williams *805 v. Williams, 70 So.3d 382, 333 (Ala.Civ.App.2009). “[Jurisdiction to make a child custody determination [under the UC-CJEA] is subject matter jurisdiction,” Ala. Code 1975, § 30-3B-201, Official Comment.
The UCCJEA provides the framework for the determination of what state may enter a child-custody determination regarding a child. Section 30-3B-201 provides:
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”
The UCCJEA defines “home state” in § 30-3B-102(7), which reads in its entirety:
“The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the státe in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period.”
The evidence in the record establishes that the parties’ child was born in Michigan and has never resided in Alabama. These facts raise the question whether Alabama is the child’s home state under the UCCJEA. The home-state determination in the present case is complicated by the fact that, at the time of the commencement of the father’s divorce action, the child had not yet been born. The definition of “home state” in the UCCJEA expressly addresses a situation involving a child less than six months of age at the time of the commencement of the action, whose home state would be “the state in which the child lived from birth” with a parent or a person acting as a parent. However, the definition does not clearly indicate how it is to be applied to unborn children, who, at the time of the com *806 mencement of the action seeking to determine their custody, have not yet “lived from birth” in any state.
Alabama has yet to consider the application of the UCCJEA to such a situation. The determination of this jurisdictional question requires us to interpret the definition of “home state” contained within the UCCJEA. Thus, we will begin by considering the principles applicable to statutory construction.
“It is this Court’s responsibility to give effect to the legislative intent whenever that intent is manifested. State v. Union Tank Car Co., 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. Ex parte Jackson, 614 So.2d 405, 406-07 (Ala.1993).... Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says. Ex parte Shelby County [Health ] Care Auth., 850 So.2d 332 (Ala.2002).”
Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003). In addition, “ ‘ “ ‘[tjhere is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.’ ” ’ ” Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 970 (Ala.Civ.App.2008) (quoting Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000), quoting in turn other cases).
A fair reading of § 30-3B-102(7) results in the conclusion that an unborn child cannot have a home state. Generally, a state secures the status of “home state” if a child has lived in that state with a parent or a person acting as a parent for a period of six months preceding the commencement of a child-custody proceeding. § 30-3B-102(7). Pursuant to its definition, the term “home state” is expressly applied to children less than six months of age, and the requirement that the child live in a state for at least six months preceding the commencement of a child-custody proceeding is relaxed to make the home state that state “in which the child lived from birth with [a parent or a person acting as a parent].” Id. An unborn child, however, has not “lived from birth” in any state.[1] Thus, we are convinced that the UCCJEA does not provide a basis for jurisdiction over a child-custody proceeding involving an unborn child.
Such a construction comports with the conclusion of three of our sister states that have directly considered the question under their versions of the UCCJEA.[2] See, *807 e.g., Arnold v. Price, 365 S.W.3d 455, 461 (Tex.App.2012) (concluding that a home-state determination could not be made at the commencement of a child-custody proceeding when the child was yet unborn and that the state in which the child was later born would become his home state at the time of his birth); B.B. v. A.B., 31 Misc.3d 608, 916 N.Y.S.2d 920 (Sup.Ct.2011) (determining that the home state of a child born in Minnesota after the mother decided not to return to New York after a visit to her childhood home in Minnesota was Minnesota and not New York, where the mother and father had resided as a married couple); Waltenburg v. Waltenburg, 270 S.W.3d 308, 318 (Tex.App.2008) (deciding under the Texas version of the UCCJEA that the UCCJEA “does not authorize jurisdiction over a child custody claim concerning a child before its birth”); In re Custody of Kalbes, 302 Wis.2d 215, 733 N.W.2d 648 (Ct.App.2007) (determining that Idaho did not have jurisdiction under the UCCJEA of a child who was not born at the time the Idaho action was instituted and who was later born in Wisconsin); see also In re Marriage of Tonnessen, 189 Ariz. 225, 227, 941 P.2d 237, 239 (Ct.App.1997) (determining under the Uniform Child Custody Jurisdiction Act (“UCCJA”) that Arizona was the home state of a child born in Arizona and stating that “[t]he statute does not contemplate the in útero period of time in determining ... home state; it contemplates a postnatal child”); and In re Marriage of Tonnessen, 937 P.2d 863 (Colo.Ct.App.1996) (concluding under the UCCJA that Arizona was the home state of the children born in Arizona after the institution of an action in Colorado).
We find instructive the rationale relied upon by the Texas Court of Appeals in both Arnold and Waltenburg. In Walten-burg, the father had commenced a custody proceeding regarding his unborn child in Arizona before the child was born, and the mother commenced an action in Texas after the child’s birth there. Waltenburg, 270 S.W.3d at 311. When the Texas trial court dismissed the mother’s child-custody proceeding, the mother appealed. Id. at 312. In its consideration of the mother’s appeal, the Texas Court of Appeals rejected the father’s argument that the Arizona court had subject-matter jurisdiction over the custody proceeding filed in Arizona because, the father contended, under the UCCJEA, an unborn child had no “home state,” stating:
“[Rjeading the UCCJEA to authorize jurisdiction over a custody matter concerning an unborn child would defeat the clear purpose underlying the legislature’s enactment of the UCCJEA — to prioritize home-state jurisdiction. See Powell[ v. Stover ], 165 S.W.3d [322,] 325 [ (Tex.2005) ]. Under such a reading, a party could file suit pre-birth under the UCCJEA provision authorizing jurisdiction when ‘no other court has jurisdiction,’ and use the ‘simultaneous proceeding’ provision to control, post-birth, whether the child’s home state can ever *808 exercise that ‘priority’ jurisdiction. We reject this reading of the UCCJEA.”
Waltenburg, 270 S.W.3d at 318.
The holding in Waltenburg was applied and further explained in Arnold, which concerned whether a Texas court had subject-matter jurisdiction over a child-custody proceeding commenced in Texas by a father before the birth of his child despite the fact that the child had since been born to the mother in California. Arnold, 365 S.W.3d at 457. The Arnold court explained that, although a child’s home state is typically determined at the time of the commencement of the child-custody proceeding, a child’s home state may not be determined until his or her birth. Id. at 461. That is, the court stated, “subject matter jurisdiction for a child that had not been born at the time of commencement is determined ‘on the pleadings of the parties and the undisputed evidence as to the date and location of [the child]’s birth.’ ” Id. (quoting Waltenburg, 270 S.W.3d at 315).
Because the father commenced his action in the Alabama trial court before the birth of the parties’ child, we conclude that the determination of the child’s home state was necessarily deferred until its birth. The undisputed evidence before the Alabama trial court is that the child was born in Michigan and that the child has lived since birth with the mother in Michigan. Thus, the child’s home state is Michigan, and the Alabama trial court lacks subject-matter jurisdiction under § 30-3B-201(a)(1) to make an initial child-custody determination regarding the child.
We note that in Arnold the Texas Court of Appeals went further than merely determining that California was the child’s home state and that the Texas trial court could not therefore exercise home-state jurisdiction to make an initial child-custody determination regarding the child. Id. at 461. It also considered whether the Texas trial court could exercise jurisdiction under any other provision of its version of the UCCJEA. Id. at 461-62. We believe that, in order to properly resolve this appeal, we, too, must consider whether the Alabama trial court had any other basis upon which to exercise jurisdiction to make an initial child-custody determination regarding the child.
Section 30-3B-201 (a)(2) provides that an Alabama court has jurisdiction to make an initial child-custody determination when either (1) no other state court has jurisdiction under the home-state provision or (2) the court of the child’s home state has declined to exercise its jurisdiction on the ground that Alabama is a more convenient forum under § 30-3B-207 or on the ground that “a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct” under § 30-2B-208, and (3) when a significant connection exists between the child and at least one parent and Alabama and substantial evidence concerning and relating to the child is available in Alabama. Because we have concluded that Michigan is the child’s home state, another state court has jurisdiction under § 30-3B-201(a)(1). No Michigan court has declined to exercise its jurisdiction. Thus, the Alabama trial court does not have jurisdiction under § 30-3B-201(a)(2).
Similarly, § 30-3B-201(a)(3) requires that any court having jurisdiction under either § 30-3B-201(a)(1) or (2) to have declined to exercise jurisdiction under § 30-3B-207 or § 30-3B-208 before an Alabama court may exercise jurisdiction. As we have mentioned, a Michigan court would have home-state jurisdiction, and no Michigan court has declined to exercise that jurisdiction. As a result, the Alabama trial court does not have jurisdiction under § 30-3B-201(a)(3). The final subsection providing for jurisdiction over an initial child-custody determination, § 30-3B-201(a)(4), permits an Alabama *809 court to exercise jurisdiction if no other state would have jurisdiction under any other subsection of § 30-3B-201(a). Because we have determined that Michigan is the home state of the child, the Alabama trial court could not exercise jurisdiction under § 30-3B-201(a)(4).
The Alabama trial court did not have subject-matter jurisdiction under any provision in the UCCJEA to make an initial child-custody determination regarding the child, and its judgment is therefore void. Fuller v. Fuller, 93 So.3d 961, 966 (Ala.Civ.App.2012). A void judgment will not support an appeal. C.J.L. v. M.W.B., 868 So.2d 451, 454 (Ala.Civ.App.2003). We therefore dismiss the father’s appeal, and we instruct the Alabama trial court to set aside that portion of its divorce judgment containing the child-custody determination regarding the parties’ child.
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. This construction of § 30-3B-102(7), resting as it does on the modifying phrase "lived from birth,” does not run afoul of our supreme court’s recent pronouncement in Ex parte Ankrom, [Ms. 1110176, January 11, 2013] - So.3d -, -(Ala.2013), that the term "child” includes both unborn children and living children.

. Other states have considered the question in the context of the predecessor statute to the UCCJEA, the Uniform Child Custody Jurisdiction Act ("the UCCJA”), which did not prioritize home-state jurisdiction. See, e.g., Stewart v. Vulliet, 888 N.E.2d 761, 765 (Ind.2008) (concluding that an unborn child has no home state under the UCCJA and that, because no state had home-state jurisdiction, the Indiana court could exercise jurisdiction over the custody issue because the unborn child’s parents had resided in Indiana and because information regarding the unborn child’s parents and other family members was available in Indiana); Haywood v. Superior Court of Los Angeles, 77 Cal.App.4th 949, 955-56, 92 Cal.Rptr.2d 182, 186-87 (2000) (determining that, at the time the action was commenced, the unborn child did not have a *807 home state under the UCCJA, but determining that the California court had jurisdiction under the former significant-connection test of the UCCJA); and Gullett v. Gullett, 992 S.W.2d 866, 869-70 (Ky.Ct.App.1999) (determining that an unborn child had no home state under the UCCJA at the commencement of a child-custody proceeding, that Kentucky could therefore exercise jurisdiction because no other state had jurisdiction and it would be in the unborn child's best interest that Kentucky exercise jurisdiction, and that, upon the child's birth in Ohio, Ohio was the child’s home state and would have concurrent jurisdiction over the child’s custody, subject to Kentucky's continuing jurisdiction). Because these cases were based on the language of the UCCJA, we do not find them to be persuasive authority under the UCCJEA.