STATE v. GREEN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE v. GREEN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE v. GREEN
2020 OK CR 18
Case Number: S-2019-308
Decided: 09/10/2020
THE STATE OF OKLAHOMA, Appellant v. KATHRYN JUANITA GREEN, Appellee.
Cite as: 2020 OK CR 18, __ __

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 The State of Oklahoma charged Appellee Kathryn Juanita Green by third amended Information in the District Court of Garfield County, Case No. CF-2017-274, with, inter alia, Child Neglect (Count 1), in violation of 21 O.S.Supp.2014, § 843.5(C).[1] The State alleged in Count 1 that Green willfully or maliciously neglected her unborn child through her own failure or omission to protect the fetus from exposure to the use and/or possession of illegal drugs and/or other illegal activities while the unborn child was under the age of 18 and Green was a person responsible for the child's well-being. The magistrate bound Green over on all charges, including Count 1. Green filed a motion to quash Count 1 on the legal ground that a fetus was not a "child" subject to protection under the child neglect statute. After various amendments to her motion and the filing of State responses, the Honorable Dennis Hladik, District Judge, held a hearing and granted Green's motion to quash Count 1.[2] The State announced its intent to appeal the ruling in open court and perfected the instant appeal. Judge Hladik filed a written minute order memorializing his ruling. The State of Oklahoma identifies three overlapping issues for review:

(1) whether Oklahoma criminal law extends its protection to a human fetus;

(2) whether an unborn human offspring is a "child" for purposes of Title 21; and

(3) whether the district court abused its discretion in granting Green's motion to quash Count 1.

¶2 We reverse the district court's order for the reasons discussed below.

FACTS

¶3 Green gave birth to a stillborn son sometime in the early spring of 2017.[3] Police found the deceased infant, on April 9, 2017, inside a wooden box that had been placed in a construction dumpster outside Green's home. The medical examiner performed an autopsy on the deceased infant, who was in the early stages of generalized postmortem decomposition, and found no signs of traumatic injury. Toxicology screening revealed the presence of methamphetamine in the infant's system. The medical examiner opined the cause of death was methamphetamine toxicity, and the manner of death was homicide.[4]

DISCUSSION

¶4 The State challenges the district court's order sustaining Green's motion to quash Count 1. We exercise jurisdiction under 22 O.S.2011, § 1053(4).[5] Generally in state appeals, we review a district court's ruling for an abuse of discretion.[6] See State v. Haliburton, 2018 OK CR 28, ¶ 12, 429 P.3d 997, 1000. This case, however, does not involve a question of fact, but instead presents a question of law, namely whether an unborn fetus constitutes a "child under eighteen (18) years of age" within the protection of the child neglect statute, and ultimately whether the State may prosecute Green for child neglect because of her alleged methamphetamine use during pregnancy. Because the claim involves statutory interpretation only, our review is de novo. Truskolaski v. State, 2019 OK CR 4, ¶ 4, 458 P.3d 620, 621.

¶5 "The fundamental rule of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute." Soto v. State, 2014 OK CR 2, ¶ 7, 326 P.3d 526, 527. We give statutory language its plain and ordinary meaning. King v. State, 2008 OK CR 13, ¶ 7, 182 P.3d 842, 844. In a minute order granting Green's motion to quash Count 1, the district court found the fact that the statute did not define the term "child" to explicitly include the unborn was dispositive:

This statute defines a child as a person under the age of 18. It would have been easy for the legislature to include in the definition additional terms such as conception, fetus or trimester if it had been their intent to apply this statute to the gestation period. For this court to apply this statute to a fertilized egg, zygote, embryo, fetus, or any of the months or trimesters of pregnancy would require it to legislate from the bench which is prohibited.

¶6 In its ruling, the district court analyzed the interplay of three statutory provisions: Oklahoma's criminal child neglect statute in Title 21, the definition of "neglect" in Title 10A which is the Children's Code, and the definition of "child" also in Title 10A. The first of these, 21 O.S.Supp.2014, § 843.5(C), reads as follows:

C. Any parent or other person who shall willfully or maliciously engage in child neglect shall, upon conviction, be punished by imprisonment in the custody of the Department of Corrections not exceeding life imprisonment, or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment. As used in this subsection, "child neglect" means the willful or malicious neglect, as defined by paragraph 47 of Section 1-1-105 of Title 10A of the Oklahoma Statutes, of a child under eighteen (18) years of age by another.

(emphasis added).

Thus, the child neglect criminal provision incorporates the definition of "neglect" from our civil Children's Code. Title 10A O.S.Supp.2016, § 1-1-105(47) reads:

"Neglect" means:
. . .
b. the failure or omission to protect a child from exposure to any of the following:
(1) the use, possession, sale, or manufacture of illegal drugs....

¶7 It is clear from the record that the district court also relied upon the definition of "child" found in this same section of the Children's Code, specifically Section 1-1-105(7), presumably because the definition of "neglect" makes reference to the term "child." This reasoning assumes, erroneously we think, that the Legislature intended to incorporate the Section 1-1-105(7) definition of "child" into Section 843.5(C). Just as the Legislature specifically referenced the definition of "neglect," so too would it have specifically incorporated the definition of "child," had it intended that both these definitions inform the criminal neglect statute. Section 843.5(C) makes no attempt to define the specific acts or omissions constituting child neglect, but rather it incorporates them by reference from the Children's Code. Conversely, Section 843.5(C) very plainly enumerates the class of persons protected as any "child under eighteen (18) years of age," and understandably makes no incorporation by reference to the Children's Code to define that class. There is therefore no need to borrow or incorporate further definition of whom this statute protects, and to assume that the Legislature intended to supplement this "child under eighteen (18) years of age" language from Section 843.5(C) with Title 10A's definition of child as "any unmarried person under eighteen (18) years of age" is dubious at best and leads to further ambiguity. "[T]he rules of statutory construction are intended as an aid to resolve doubts and not to create them." Ex parte Higgs, 1953 OK CR 160, 97 Okl. Cr. 338, 341, 263 P.2d 752, 756. We find that the Legislature did not intend that 21 O.S.Supp.2014, § 843.5(C) incorporate the definition of "child" found in 10A O.S.Supp.2016, § 1-1-105(7).[7]

¶8 Green maintains "[t]here is simply no doubt that the term 'child' from the Children's Code is incorporated by explicit reference" into the child neglect provisions of Title 21. On the contrary and as noted above, this is not at all clear. The only term explicitly incorporated by reference is "neglect," and because Section 843.5(C) explicitly refers to "a child under 18 years of age," grafting onto this the redundant language of the Children's Code definition of "child" results in superfluous language. "[R]ules of statutory interpretation require us to avoid any statutory construction which would render any part of a statute superfluous or useless." State ex rel. Mashburn v. Stice, 2012 OK CR 14, ¶ 11, 288 P.3d 247, 250 (quoting State v. Doak, 2007 OK CR 3, ¶ 7, 154 P.3d 84, 87).

¶9 In support of her position, Green directs us to Burns v. Alcala, 420 U.S. 575, 581 (1975), and its language that "the word 'child . . . refer[s] to an individual already born, with an existence separate from its mother." In Burns, the United States Supreme Court considered the definition of "dependent child" under the federal Aid to Families With Dependent Children (AFDC) statute. Plaintiffs were pregnant women who claimed their unborn children were "dependent" children under the statute and therefore they were entitled to welfare benefits based upon the child before its birth. Analyzing the history and purpose of the AFDC program, the Supreme Court concluded that "dependent child" within that statute contained no entitlement to welfare benefits for children not yet born. Id. at 577-87. Green also cites Starks v. State, 2001 OK 6, 18 P.3d 342 for the proposition that "child" under the Children's Code does not mean the same thing as fetus or unborn child. In that case, the Oklahoma Supreme Court held that the State could not take emergency custody of an unborn child whose mother was alleged to be using methamphetamine. Id. 2001 OK 6, ¶¶ 18-19, 18 P.3d at 347-48. Neither Burns nor Starks is helpful to the question before us. These decisions that the unborn are not to be counted for purposes of calculating welfare benefits under federal law, or that the State cannot assume physical custody of a fetus prior to its birth, do nothing to inform whether Oklahoma's criminal law protects an unborn child from the specific acts of neglect at issue here.

¶10 We must then look elsewhere to determine whether the stillborn fetus in this case is a "child under eighteen (18) years" as referenced in and protected by Oklahoma's child neglect statute, 21 O.S.Supp.2014, § 843.5(C). "To determine legislative intent we may look to each part of the statute, similar statutes, the evils to be remedied, and the consequences of any particular interpretation." King, 2008 OK CR 13, ¶ 7, 182 P.3d at 844. A review of other Oklahoma statutes for use and definition of the terms "person," "child," "human being," and the like is not helpful to our resolution of this case. In the Definition and General Provisions section of our statutes, "[t]he word 'person,' except when used by way of contrast, includes not only human beings, but bodies politic or corporate." 25 O.S.2011, § 16. The term "children" is defined as "children by birth and by adoption." 25 O.S.2011, § 7. Another statute goes so far as to define "person" to include everything from individuals and corporations to the State and its political subdivisions. 25 O.S.Supp.2013, § 1451(A)(3). Simply put, it is clear these terms have no general or universal meaning within our statutes, and in fact it is not uncommon in the law for such general terms to mean various things in various statutes. "[T]here is no 'canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing.'" Jennings v. Rodriguez, 138 S.Ct. 830, 845-46 (2018) (quoting Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 540 (2013)).

¶11 Where we do find guidance is in Hughes v. State, 1994 OK CR 3, 868 P.2d 730, wherein this Court abandoned the common law "born alive" rule and held that an unborn viable fetus is a "human being" for purposes of Oklahoma's homicide statutes. In that case, the appellant was convicted of manslaughter for causing the death of an unborn child approximately four days before the expected delivery. This Court, in abandoning the common law "born alive" rule, found that the unborn fetus was a human being as that term was defined in 21 O.S.1981, § 691. "We now abandon the common law approach and hold that whether or not it is ultimately born alive, an unborn fetus that was viable at the time of injury is a 'human being' which may be the subject of a homicide under 21 O.S.1981, § 691 ('Homicide is the killing of one human being by another')." Hughes, 1994 OK CR 3, ¶ 4, 868 P.2d at 731. In arriving at this conclusion, we looked first at the purpose of the statute itself.

The purpose of Section 691 is, ultimately, to protect human life. A viable human fetus is nothing less than human life. As stated by the court in Cass, "[a]n offspring of human parents cannot reasonably be considered to be other than a human being . . . first within, and then in normal course outside, the womb." Cass, supra, 467 N.E.2d at 1325. Thus, the term "human being" in Section 691--according to its plain and ordinary meaning--includes a viable human fetus.

Id. 1994 OK CR 3, ¶ 15, 868 P.2d at 734 (emphasis added).

¶12 Using similar reasoning, we find the purpose of Section 843.5 is ultimately to protect from abuse, neglect, or exploitation the most vulnerable among us: children. A child several weeks away from birth, as was the fetus in this case, is every bit as vulnerable to and in need of protection from neglect and its potential harm as a child one minute after birth. To interpret Section 843.5(C) to deny that protection to the unborn child in this case is to thwart the clear trajectory that Oklahoma law has been on for at least the past quarter century, which is to protect children, born and unborn, from potential harm because they cannot protect themselves. Just as the term human being, "according to its plain and ordinary meaning--includes a viable human fetus[,]" so too does the term "child" in the very statute intended to protect children from neglect.

¶13 Two additional points support this conclusion. First, in addition to holding that "an unborn fetus that was viable at the time of the injury" can be the victim of a homicide, Hughes also overruled State v. Harbert, 1988 OK CR 134, 758 P.2d 826, which had held that a fetus was not a person who could be the victim of assault and battery with a deadly weapon. Hughes, 1994 OK CR 3, ¶ 15, 868 P.2d at 734. Thus, current Oklahoma law clearly protects unborn children from not only homicide but also from assault and battery. Second, twelve years after our holding in Hughes the Legislature amended the definition of "human being" in 21 O.S.Supp.2006, § 691, going even farther than Hughes and making clear that '"human being' includes an unborn child, as defined in Section 1-730 of Title 63 of the Oklahoma Statutes." Section 1-730(4) in turn defines "unborn child" as "the unborn offspring of human beings from the moment of conception, through pregnancy, and until live birth including the human conceptus, zygote, morula, blastocyst, embryo and fetus...[.]"

¶14 Green would have us limit these cases to the actions of a third party as opposed to the acts of the expectant mother herself, but neither Hughes nor Harbert contain any such limitation. Furthermore, in essentially codifying the Hughes holding, Oklahoma's Legislature made clear that the mother of an unborn child could be held responsible for fetal death when occasioned by her criminal action. "Under no circumstances shall the mother of the unborn child be prosecuted for causing the death of the unborn child unless the mother has committed a crime that caused the death of the unborn child." 21 O.S.2011, § 691(D). Interpreting the child neglect statute to allow others to be prosecuted for bringing harm to an unborn child while shielding from criminal liability those very same harmful acts when committed by the mother would frustrate the very purpose of the statute, which is to protect children who cannot protect themselves. "We have also held that when statutes are specifically designed by the Legislature to treat a given situation, that intent should be effectuated." Lozoya v. State, 1996 OK CR 55, ¶ 18, 932 P.2d 22, 29 (citing Luster v. State, 1987 OK CR 261, 746 P.2d 1159).

¶15 Green maintains that interpreting Oklahoma's child neglect statute to protect her unborn child from neglect would violate her constitutional rights in three ways. First, she maintains it would violate her due process rights because she did not have adequate notice that her conduct could subject her to criminal liability.

Due process requires that a criminal statute give fair warning of the conduct which it prohibits. Specifically, the Supreme Court of the United States has held that: "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

Hughes, 1994 OK CR 3, ¶ 20, 868 P.2d at 735 (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)). The Hughes court made its holding prospective only, noting that the defendant in that case may not have had fair warning that her conduct could subject her to criminal liability for the death of an unborn child. Hughes, 1994 OK CR 3, ¶ 22, 868 P.2d at 735-36. Hughes and Harbert, however, have now been the law in Oklahoma for over twenty-five years, during which time the Legislature expanded the definition of human being first recognized in Hughes. We cannot find that Green lacked adequate notice that her use of illegal drugs while thirty-three weeks pregnant could subject her to criminal liability for child neglect when she unquestionably would have faced prosecution had the very same conduct been shown to have caused her baby's death. It simply makes no sense to excuse one's criminal and lethal acts because the unborn child survived the neglect or, as here, where the State elects not to pursue a homicide charge but opts for a less serious offense based upon the same conduct. Applying Hughes and Harbert to the facts of this case does not violate Green's due process rights.

¶16 Green suggests that our holding today would subject "any woman who used any amount of alcohol, nicotine, or a controlled substance" to criminal prosecution, but there is nothing in the definition of neglect quoted above which criminalizes the exposure of children to alcohol or nicotine.[8] Furthermore, the fact that hypotheticals might be envisioned with less prosecutive merit than this case does not change the case before us, the evidence of which shows that a fetus was stillborn at about thirty-three weeks, and that the death was a homicide caused by a lethal amount of methamphetamine.

¶17 The second constitutional claim, that interpreting Section 843.5(C) to apply to her unborn child violates her right to privacy, requires little discussion. In support of this argument, she relies upon Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833 (1992), involving one's right to privacy in obtaining a lawful abortion, and upon Carey v. Population Servs. Int'l, 431 U.S. 678 (1977), regarding the sale of contraceptives. This is not a case about a woman's right to an abortion, or any person's right to secure contraceptives. Just as the right to privacy recognized in those cases does not prohibit prosecution of a mother whose unlawful acts cause the death of her unborn child, neither does this right prohibit prosecution for those same acts which harm but do not result in the child's death.

¶18 The third constitutional claim urged by Green is that "[p]rosecuting a woman for experiencing a miscarriage or a stillbirth violates her Constitutional right to equal protection under the law." She maintains that if Oklahoma's child neglect statute is interpreted to protect the unborn child in this case, "women who become pregnant and experience pregnancy loss would be subject to criminal prosecution, but men are not." We do not agree. Green has not been charged with experiencing a miscarriage or stillbirth, and nothing in Section 843.5(C) or its incorporated definition of neglect would permit such a prosecution. The allegation here is that Green failed to protect her child from "the use, possession, sale, or manufacture of illegal drugs." 10A O.S.Supp.2016, § 1-1-105(47). Equal protection requires that similarly situated persons be treated similarly. See Castillo v. State, 1998 OK CR 9, ¶ 10, 954 P.2d 145, 147. Her objection is that this law treats females differently from males, but the fact that a statute may treat the genders differently does not constitute a per se equal protection violation as long as the differentiation is not invidious. State v. Johnson, 1988 OK CR 273, ¶ 13, 765 P.2d 1226, 1229 (holding criminal statute prohibiting a woman from concealing stillbirth or death of a child does not violate the Equal Protection Clause). Moreover, this statute creates no gender distinctions but applies to any person who fails to protect a child from exposure to illegal drug activity. How and when it might apply to a third party alleged to have exposed an unborn child to illegal drugs is not before us and must await another case and another day. Prosecuting Green for the acts alleged above does not implicate her rights to equal protection under the law.

¶19 In sum, we hold that just as a viable fetus may be the victim of a homicide or an assault with a dangerous weapon, so too may he or she be a victim of child neglect under the facts presented by this case. We offer no opinion as to how or whether other acts of neglect enumerated in 10A O.S.Supp.2016, § 1-1-105(47) might apply to unborn child victims and we decline the State's invitation to opine whether an unborn human offspring is a child for purposes of the entirety of Title 21. We grant relief as to the State's third issue because, as explained above, we find the district court abused its discretion in granting Green's motion to quash Count 1.

DECISION

¶20 The ruling of the district court sustaining Green's motion to quash Count 1 is REVERSED. Green's request for oral argument is DENIED. This case is REMANDED for further proceedings not inconsistent with this opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF GARFIELD
COUNTY, THE HONORABLE DENNIS HLADIK, DISTRICT JUDGE

 

 
 
 
 APPEARANCES IN
 DISTRICT COURT
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 TALLENA HART
 SEAN KARL HILL
 ASST. DISTRICT ATTORNEYS
 114 W. BROADWAY
 ENID, OK 73701
 ATTORNEYS FOR STATE
 
 
 JIMMY BUNN JR.
 TALLENA HART
 SEAN KARL HILL
 ASST. DISTRICT ATTORNEYS
 114 W. BROADWAY
 ENID, OK 73701
 ATTORNEYS FOR APPELLANT
 
 
 
 
 DANIEL N. ARSHACK
 ATTORNEY AT LAW
 1790 BROADWAY,
 SEVENTH FLOOR
 NEW YORK, NY 10019

 CHERYL A. RAMSEY
 SZLICHTA & RAMSEY
 EIGHT MAIN PLACE
 STILLWATER, OK 74076

 JUSTIN LAMUNYON
 ATTORNEY AT LAW
 118 N. INDEPENDENCE
 ENID, OK 73701
 ATTORNEYS FOR GREEN
 
 
 DANIEL N. ARSHACK
 NAT'L ADVOCATES FOR
 PREGNANT WOMEN
 1790 BROADWAY,
 SEVENTH FLOOR
 NEW YORK, NY 10019
 AARIN MICHELE WILLIAMS
 NATI'L ADVOCATES FOR
 PREGNANT WOMEN
 875 6TH AVE., SUITE 1807
 NEW YORK, NY 10001

 CHERYL A. RAMSEY
 ATTORNEY AT LAW
 P.O. BOX 1206
 STILLWATER, OK 74076

 JUSTIN LAMUNYON
 ATTORENY AT LAW
 118 N. INDEPENDENCE
 ENID, OK 73701
 ATTORNEYS FOR APPELLEE

 HAYLEY HOROWITZ
 KRISTINA SALEH
 STILL SHE RISES
 567 E. 36TH ST. N.
 TULSA, OK 74106

 GREY GARDNER
 DRUG POLICY ALLIANCE
 1330 BROADWAY, SUITE 1426
 OAKLAND, CA 94606
 ATTORNEYS FOR AMICI
 CURAIE
 
 
 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Specially Concur
KUEHN, V.P.J.: Specially Concur
LUMPKIN, J.: Concur
HUDSON, J.: Concur

FOOTNOTES

[1] The State also charged Green with Count 2 -- Unlawful Removal of a Dead Body; Count 3- Child Neglect; Count 4 -- Possession of Controlled Dangerous Substance; Count 5 -- Desecration of a Human Corpse; and Count 6 - Obstructing an Officer.

[2] Green also sought to quash Counts 2, 4, 5, and 6. Judge Hladik denied Green's motion to quash those counts.

[3] His gestational age was estimated at 33 to 34 weeks. One of the investigators noted in his report that the medical examiner said the infant suffered intrauterine demise, i.e., stillborn. The investigator conceded he had no medical reports either contradicting that statement or indicating that the infant had been born alive.

[4] Prior to preliminary hearing, the State charged Green in Count 1 with Second Degree Murder. The prosecutor informed the magistrate that the State had amended Count 1 to child neglect "because medical science in this case could not exclude the reasonable possibility another medical condition or anomaly may have contributed to the death of Baby Boy Green."

[5] Under Section 1053(4), the State may appeal "[u]pon judgment for the defendant on a motion to quash for insufficient evidence in a felony matter[.]"

[6] We give deference to the district court's ruling and we will find an abuse of discretion only when a district court's decision is not supported by the facts or law concerning the matter. See Hammick v. State, 2019 OK CR 21, ¶ 15, 449 P.3d 1272, 1277 (defining abuse of discretion).

[7] This view is supported by the corresponding uniform jury instruction on the elements of child neglect, which makes no reference to the "unmarried person" language in 10A O.S.Supp.2016, § 1-1-105(8), but rather refers only to "a child under the age of eighteen," taken from 21 O.S.Supp.2014, § 843.5(C). The instruction reads in relevant part:

First, a person responsible for the child's health, safety, or welfare;

Second, willfully/maliciously;

[Third, failed/omitted to protect;

Fourth, a child under the age of eighteen from exposure to;

Fifth, (the use/possession/sale/manufacture of illegal drugs)/(illegal activities)/(sexual acts or materials that are not age-appropriate).]

Instruction No. 4-37, OUJI-CR(2d) (Supp.2015).

[8] The argument of Amici Curiae in this regard is more limited, urging that pregnant women under the legal age for buying alcohol or nicotine could be prosecuted, presumably under Title 10A O.S.Supp.2016, 1-1-105(47)(b)(2), which covers failure to protect a child from illegal activities. We do not today address the applicability of other acts of neglect covered under this definition other than the one at issue here, Section 1-1-105(47)(b)(1).

LEWIS, P.J., SPECIALLY CONCURRING:

¶1 I concur in the Court's conclusion that acts of illegal drug exposure against an unborn human offspring may be prosecuted as child neglect under 21 O.S.Supp.2014, section 843.5(C). The Legislature removed all reasonable doubt of the State's policy when it amended 21 O.S.2011, § 691(B) to define the phrase "human being" to include an "unborn child, as defined in Section 1-730 of Title 63 of the Oklahoma Statutes;" and likewise excepted from its definition of homicide a legal abortion. § 691(C)(1).

¶2 Contrary to Appellee's arguments grounded in her constitutional rights to privacy and equal protection, no person, including a pregnant mother, is privileged to commit acts of homicide, assault, or neglect against an unborn child according to our statutes and case law. Stated another way, the statutory obligation to refrain from such acts does not unduly burden the defendant's exercise of any constitutionally protected right to privacy or equal protection of the law.

KUEHN, V.P.J., SPECIALLY CONCURRING:

¶1 I join the Majority's well-reasoned interpretation of 21 O.S.Supp.2014, § 843.5(C).[1] However, when discussing the nearly identical deprived "child neglect" statute in 10A O.S.Supp.2014, § 1-1-105 with criminal Title 21 "child neglect," the Majority does not mention important differences between them. I specially concur to discuss these differences.

¶2 Title 21 is a criminal code, while Title 10A is a child welfare code. Criminal codes are not drafted to rehabilitate an offender or to protect a victim, but to punish an offender for criminal conduct. Ideally, the threat of punishment will deter crime and keep the community safer. When discussing the criminal code, the Majority holds that the purpose of Section 843.5 is ultimately to protect "the most vulnerable among us: children." I respectfully disagree. The purpose of Section 843.5 (or any criminal statute) is to punish the offender and protect society. My point is supported by the tragic circumstances in this case. Prosecuting the mother will not protect the stillborn victim in this case.[2]

¶3 Recognizing the differences between the criminal and children's codes, the Oklahoma Supreme Court has held that although a fetus may be a "human being" under the former, it is not a "child" under the latter. In re Unborn Child of Starks, 2001 OK 6, ¶ 14, 18 P.3d 342, 345. In so holding, the Court recognized that the purpose of the Children's Code was to protect a born child from harm by another.[3] This Court, too, can readily conclude that Section 843.5(C) applies to a fetus.

¶4 Another glaring difference between the two child-neglect statutes is that only the criminal version requires the State to prove the offender's conduct was "willful" or "malicious."[4] The Legislature, by adding those terms, elevated child abuse and neglect under Section 843.5, to punish criminally those who potentially harm or actually harm a child, including a fetus in a willful or malicious manner.

FOOTNOTES

[1] Under similar circumstances, this Court held in 2018 that a fetus is a child. "[T]he Legislature's intent is clear: a defendant may be prosecuted for the homicide of an unborn child, whether or not that child is viable. An unborn child is clearly a 'human being' for purposes of the homicide statutes." Cyr v. State, No. F-2016-1122 (unpub. September 20, 2018) (Kuehn, V.P.J, for the Majority), slip op. at 10.

[2] In child-abuse and child-neglect prosecutions, the children have already been harmed and therefore, the purpose of the charge is to punish the offender. To protect children from harm, the State files a deprived-child action. See e.g. State v. Vincent, 2016 OK CR 7, 371 P.3d 1127 (defendant charged with child neglect for drunk driving with another person's child in the car; when stopped, the drunk driving had already occurred); Ball v. State 2007 OK CR 42, 173 P.3d 81 (defendant claimed he spilled boiling water on his three-year-old and did not take him to the hospital; expert said it seemed like the water had been poured deliberately and that it would have been apparent to anyone that immediate medical attention was necessary; child died and defendant was convicted of both murder and child neglect; child-neglect charge was purely to punish defendant because the child had already passed away); State v. Haliburton 2018 OK CR 28, 429 P.3d 997 (defendants charged with child neglect for selling drugs out of the home they shared with their minor children; again, the criminal act had already occurred at the time of prosecution).

[3] "No fetus could be in need of mental health treatment, and no fetus could be placed through child placement services. These terms apply only to those who are born, living outside the womb of the mother. Similarly, the definitions pertaining to 'deprived child' under § 7001--1.3(14) could not apply to a fetus." Starks, 2001 OK 6, ¶¶ 16-17, 18 P.3d at 346--47.

[4] "Willful" implies a purpose or willingness to commit the act or the omission referred to, but does not require any intent to violate the law or to acquire any advantage. 21 O.S.2011, § 92. "Malicious" imports "a wish to vex, annoy or injure another person." 21 O.S.2011, § 95.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1987 OK CR 261, 746 P.2d 1159, LUSTER v. STATE
Discussed
 1988 OK CR 134, 758 P.2d 826, STATE v. HARBERT
Discussed
 1988 OK CR 273, 765 P.2d 1226, STATE v. JOHNSON
Discussed
 1994 OK CR 3, 868 P.2d 730, HUGHES v. STATE
Discussed at Length
 1996 OK CR 55, 932 P.2d 22, Lozoya v. State
Discussed
 2007 OK CR 3, 154 P.3d 84, STATE v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed
 2007 OK CR 42, 173 P.3d 81, BALL v. STATE
Discussed
 2008 OK CR 13, 182 P.3d 842, KING v. STATE
Discussed at Length
 2012 OK CR 14, 288 P.3d 247, STATE v. STICE
Discussed
 2014 OK CR 2, 326 P.3d 526, SOTO v. STATE
Discussed
 2016 OK CR 7, 371 P.3d 1127, STATE v. VINCENT
Discussed
 2018 OK CR 28, 429 P.3d 997, STATE v. HALIBURTON; STATE v. GOURLEY; STATE v. KNIPE
Discussed at Length
 2019 OK CR 4, TRUSKOLASKI v. STATE
Cited
 2019 OK CR 21, 449 P.3d 1272, HAMMICK v. STATE
Discussed
 1953 OK CR 160, 263 P.2d 752, 97 Okl.Cr. 338, EX PARTE HIGGS
Discussed
 1998 OK CR 9, 954 P.2d 145, 69 OBJ 595, CASTILLO v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 6, 18 P.3d 342, 72 OBJ 355, STARKS v. STATE
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 843.5, Abuse, Neglect, Exploitation, or Sexual Abuse of Child - Penalties
Discussed at Length
 21 O.S. 92, Definition of Willfully
Cited
 21 O.S. 95, Definitions - Malice, Maliciously
Cited
 21 O.S. 691, Definitions
Discussed at Length
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1053, State or Municipality May Appeal in What Cases
Cited
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 7, Children
Cited
 25 O.S. 16, Person Defined
Cited
 25 O.S. 1451, Definitions
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA