**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER A. SINGER, a/k/a
Christopher Whitefield, a/k/a Christopher
Whitfield,

    Defendant - Appellant.

No. 23-6120

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:22-CR-00309-D-1)**

_____

Laura K. Deskin, Assistant Federal Public Defender (Jeffrey M. Byers, Federal Public
Defender, with her on the briefs), Office of the Federal Public Defender for the Western
District of Oklahoma, Oklahoma City, Oklahoma, for Defendant-Appellant.

D.H. Dilbeck, Assistant United States Attorney (Robert J. Troester, United States
Attorney, with him on the briefs), Office of the United States Attorney for the Western
District of Oklahoma, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **MATHESON**, **EID**, and **ROSSMAN**, Circuit Judges.

_____

**EID**, Circuit Judge.

_____

Christopher Singer appeals his sentence on the ground that the district court erred in counting his state convictions based on Okla. Stat. tit. 21, § 645 toward its sentencing calculations because § 645 is not a categorical crime of violence under either the United States Sentencing Guidelines (the "Guidelines") or under the Armed Career Criminal Act ("ACCA"). This is so because, on his reading, § 645 includes within its ambit assault and battery of an unborn victim, and, under our precedent, the term "crime of violence" does not include any crime against unborn persons. *See United States v. Adams*, 40 F.4th 1162, 1170 (10th Cir. 2022). Because we agree with Singer that § 645 criminalizes the assault and battery of an unborn person with a dangerous weapon, and that § 645 is thus not a categorical crime of violence, we reverse and remand for a new sentencing consistent with this opinion.

## I.

During a drive-by shooting investigation, Oklahoma City police discovered that Christopher Singer, a felon, possessed three rounds of spent 9mm cartridge cases and one live round of .38 ammunition. The government charged Singer with possessing ammunition after a felony conviction, and he pleaded guilty.

At Singer's sentencing, a United States Probation Officer submitted a presentence investigation report (the "PSR"). The PSR noted three prior Oklahoma state convictions:  two convictions for assault and battery with a dangerous weapon, in violation of § 645, and robbery with a firearm. Because of these convictions, the Singer PSR concluded that Singer had at least two prior felony convictions for crimes of violence under the Guidelines and thus calculated Singer's base offense level as

2

twenty-four. The Singer PSR also concluded that such convictions qualified as violent felonies under the ACCA, and that Singer was therefore subject to a mandatory minimum of fifteen years' imprisonment. The Singer PSR ultimately determined that Singer's total offense level was thirty-one and his total criminal history category was VI. It therefore recommended a guideline range of 188 to 235 months' imprisonment.

Singer objected to the Singer PSR on one ground relevant here: he disputed whether his prior Oklahoma state convictions for assault and battery with a dangerous weapon were categorically crimes of violence under the Guidelines or violent felonies under the ACCA. In particular, Singer argued that Oklahoma's crime of assault and battery with a dangerous weapon extends to victims who have not yet been born, and therefore that it is not a categorical match for the relevant Guidelines or ACCA definitions, which include only crimes against persons born alive.

The district court determined that it was bound by our opinion in *United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016), in which we concluded that the Oklahoma state crime of assault and battery with a dangerous weapon under § 645 is categorically a crime of violence within the meaning of the Guidelines. The district court also reasoned that the relevant definitions in the Guidelines and the ACCA are identical in all relevant ways, and thus opted to apply *Taylor* to the ACCA context as well. The district court therefore overruled Singer's objection and sentenced him to 180 months' imprisonment, in accordance with the PSR and the fifteen-year mandatory minimum imposed by the ACCA.

3

Singer filed a timely notice of appeal.

## II.

We review legal determinations at sentencing de novo, including whether a defendant's conviction is a violent felony under the ACCA and whether it constitutes a crime of violence under the Guidelines. *See United States v. Cartwright*, 678 F.3d 907, 909 (10th Cir. 2012); *United States v. Wray*, 776 F.3d 1182, 1184 (10th Cir. 2015).

When it comes to state law, "[t]he authority and only authority is the State," and "the voice adopted by the State as its own . . . should utter the last word." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). Thus, when construing state law, we refer to the decisions of a state's courts or do our best to predict how the state's high court would rule. *See Valley Forge Ins. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010).

## III.

Singer has been convicted in Oklahoma state court of assault and battery with a dangerous weapon in violation of § 645. Accordingly, Oklahoma law is determinative of his appeal. In the present case, the district court found that a § 645 offense is categorically a "crime of violence" under the Guidelines, and that it should factor into the Guidelines' base offense level accordingly. Singer contends that such an offense is not categorically a "crime of violence" under the Guidelines. Making our best *Erie* prediction, we agree with Singer that the Oklahoma Court of Criminal Appeals would decide that § 645 criminalizes assault with a dangerous weapon of an

4

unborn person. Therefore, because § 645 proscribes conduct that is not covered by the Guidelines' definition of "crime of violence," § 645 is not a "crime of violence" for sentencing purposes.

**A.**

To decide whether a prior conviction "is a 'crime of violence' under the Guidelines and therefore qualifies [the defendant] for an enhanced sentence," our precedents and those of the Supreme Court demand we apply the "categorical approach." *United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017). Under the categorical approach, we must look "to the elements of the statute of conviction and not to the particular facts underlying that conviction." *Id.* (cleaned up). Therefore, our only task in this appeal is to "compare the scope of the conduct covered by the elements of the crime" with the Guidelines' "definition of 'crime of violence.'" *Id.*

Binding Tenth Circuit precedent controls the definition of crime of violence. We recently held that the term "crime of violence" in § 4B1.2(a)(1) of the Guidelines does not include any crime against unborn persons. *See United States v. Adams*, 40 F.4th 1162, 1170 (10th Cir. 2022) (considering a Kansas statute under the categorical approach). As used in the Guidelines, the term "crime of violence" means "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S. Sent'g Guidelines Manual § 4B1.2(a) (U.S. Sent'g Comm'n 2022). We held that, under federal law, "the person

5

of another" means only "those born alive," and thus excludes "victims . . . not yet born." *Adams*, 40 F.4th at 1169 (citing the Dictionary Act, 1 U.S.C. § 8(a)). We therefore concluded that if a state crime "allows a conviction . . . when the victim is a fetus," there is a "mismatch" between "the elements of the state crime and the guidelines' definition of a *crime of violence*." *Id.* at 1170–71 (emphasis in original). Accordingly, as we have applied the categorical approach, such a state crime is not a "crime of violence" under the Guidelines. *See id.*

One issue remains: the "scope of the conduct covered by the elements of the crime." *O'Connor*, 874 F.3d at 1151. And that is a question of pure Oklahoma state law. Singer and the government both acknowledge that the dispositive question in this appeal is whether, under Oklahoma law, Oklahoma's state crime of assault and battery with a dangerous weapon under § 645 applies to victims who are not yet born. The answer to that question is necessary to resolve Singer's appeal of his sentence.

Singer's appeal also requires us to evaluate whether Oklahoma assault and battery with a dangerous weapon is a "violent felony" under the ACCA. At sentencing, the district court concluded that Singer's two Oklahoma state convictions for assault and battery with a dangerous weapon were "violent felonies" within the meaning of the ACCA. Because Singer had another violent felony conviction, the district court ruled that he had three ACCA-predicate convictions, and therefore sentenced him under the ACCA. Singer contends on appeal that his Oklahoma § 645 convictions are not violent felonies under the ACCA for the same reasons he argues they do not qualify as crimes of violence under the Guidelines.

Under controlling Supreme Court precedent, we must analyze that question using precisely the same "categorical approach" that we are bound to employ in the Guidelines context. *See Mathis v. United States*, 579 U.S. 500, 509 (2016). Therefore, to determine whether an offense is a "violent felony" under the ACCA, we must "focus solely on whether the elements of the crime of conviction sufficiently match the elements of" the predicate offense in the ACCA, "while ignoring the particular facts of the case." *Id.* at 504.

*Adams* controls our analysis of this ACCA question, too. A "violent felony" under the ACCA is "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). As Singer, the government, and the district court agree, the ACCA and the Guidelines are identical in the only way relevant here—they both concern crimes against "the person of another." *Compare* 18 U.S.C. § 924(e)(2)(B)(i), *with* U.S.S.G. § 4B1.2(a). Accordingly, as Singer and the government agree, our precedent in *Adams* prescribes our analysis of what constitutes a "violent felony" under the ACCA.

Therefore, Singer's appeal of the district court's ACCA ruling also turns on the elements of Singer's state-law offenses. If the Oklahoma state crime of assault and battery with a dangerous weapon extends to victims who are unborn persons, then Singer's two convictions for that crime are not categorically violent felonies under the ACCA, and they cannot serve as predicate offenses for sentencing under

the ACCA.  That state-law question is once again dispositive of Singer's appeal of his sentence.

**B.**

The state-law question at issue in this appeal is clearly novel.  Neither Oklahoma's Constitution, nor its statutes, nor its courts have squarely addressed it.[1] Moreover, there are compelling arguments in both directions.  Still, the Oklahoma Court of Criminal Appeals's opinions offer us a "reasonably clear and principled course" to resolve this question in Singer's favor.  *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

The Court of Criminal Appeals has twice had occasion to consider whether unborn persons are "human beings" such that they can be victims of a crime.  The Court of Criminal Appeals first addressed this question in *Hughes v. State*, 868 P.2d 730 (Okla. Crim. App. 1994).  *Hughes* concerned the homicide statute then in effect in Oklahoma, Okla. Stat. tit. 21, § 691 (1981).  *See* 868 P.2d at 731.  In *Hughes*, the Court of Criminal Appeals held that "whether or not it is ultimately born alive, an unborn fetus that was viable at the time of injury is a 'human being,'" and thus falls within the statutory definition of "Homicide" as "the killing of one human being by

---

[1] We note here that the district court determined that it was bound by our holding in *Taylor*.  However, in *Taylor*, we did not consider the specific issue of whether Oklahoma law criminalizes the assault and battery of *unborn persons* with a dangerous weapon.  The government concedes as much, stating that our opinion in *Taylor* "did not squarely address whether Okla. Stat. tit. 21, § 645 was categorically not a crime of violence because it covered unborn victims."  Aple. Br. at 3 n.2.  Thus, our analysis here is not impacted by *Taylor*.

another." *Id.* (quoting Okla. Stat. tit. 21, § 691 (1981)). The Court of Criminal

Appeals reasoned that "[t]he purpose of Section 691 is, ultimately, to protect human

life," that "[a] viable human fetus is nothing less than human life," and that "[a]n

offspring of human parents cannot reasonably be considered to be other than a human

being." *Id.* at 734 (internal quotation marks and citations omitted). Therefore, the

court held, "the term 'human being' in Section 691—according to its plain and

ordinary meaning—includes a viable human fetus." *Id.* Likewise, the court

overruled a prior decision, which "held that a viable fetus is not a 'person' within the

meaning of" Oklahoma's statute criminalizing assault and battery with a deadly

weapon. *Id.* (citing Okla. Stat. tit. 21, § 652 (1981)).

A quarter of a century later in *State v. Green*, 474 P.3d 886 (Okla. Crim. App.

2020), the Court of Criminal Appeals relied on *Hughes* to reach a similar conclusion

with respect to Oklahoma's child neglect statute. *Id.* at 890–91. Referencing

*Hughes*, the *Green* court wrote that "just as a viable fetus may be the victim of a

homicide or an assault with a dangerous weapon, so too may he or she be a victim of

child neglect . . . ." *Id.* at 893. The court reasoned that, like the term "human being,"

the term "child" in the child neglect statute, "according to its plain and ordinary

meaning[,] includes a viable human fetus." *Id.* at 891. Therefore, the court

concluded, the child neglect statute criminalized neglect of a viable fetus, not only

neglect of a child who has already been born alive. *See id.*

The Court of Criminal Appeals has twice considered the question of whether

an unborn person can be the victim of a crime that, by its terms, applies to a "human

9

being" or a "person." And both times, it concluded that an unborn person could be a victim. Accordingly, we have no reason to believe that, if presented with this same question a third time, the Court of Criminal Appeals would decide the question any other way. And so, making our best *Erie* guess, we conclude that § 645 criminalizes assault and battery with a dangerous weapon against an unborn person.

In making this prediction, we are cognizant of legitimate countervailing arguments. First, in *Green* itself, the court clarified that "the terms 'person,' 'child,' 'human being,' and the like . . . have no general or universal meaning within [Oklahoma's] statutes." 474 P.3d at 890. And § 645 is altogether separate from the other criminal provisions that the Oklahoma Court of Criminal Appeals interpreted in *Green* and *Hughes*. *Compare* Okla. Stat. tit. 21, § 645 ("Assault, battery, or assault and battery with dangerous weapon," in Ch. 20, "Assault and Battery"), *with id.* § 691 ("Homicide defined," in Ch. 24, "Homicide"), *and id.* § 652 ("Shooting or discharging firearm with intent to kill—Use of vehicle to facilitate discharge of weapon in conscious disregard of safety of others—Assault and battery with deadly weapon, etc.," in Ch. 21, "Attempts to Kill");, *and id.* § 843.5 ("Child abuse—Child neglect—Child sexual abuse—Child sexual exploitation—Enabling—Penalties," in Ch. 30, "Miscellaneous Offenses Against the Person"). It seems, therefore, that the Court of Criminal Appeals in *Green* intentionally reserved for a future date the question of whether an unborn person can be the victim of a crime in a statute like § 645, arguably rendering *Hughes* and *Green* inapposite.

However, our task in the *Erie* context is not to determine the exact scope of Oklahoma precedent. Indeed, the fact that we must make an *Erie* "guess" presupposes an "absence of explicit guidance from the state courts." *Pehle v. Farm Bureau Life Ins.*, 397 F.3d 897, 902 (10th Cir. 2005) (quoting *United Parcel Serv., Inc. v. Weben Indus.*, 794 F.2d 1005, 1008 (5th Cir. 1996)). In this context, our goal is "reach[ing] the result that would probably be reached were the question to be litigated in a state court." *Cottonwood Mall Shopping Ctr., Inc. v. Utah Power & Light Co.*, 440 F.2d 36, 40 (10th Cir. 1971) (quotation omitted). In that inquiry, the Court of Criminal Appeals's reasoning in *Hughes* and *Green* is clearly relevant to determine what that same court would do when presented with essentially the same question. *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (stating we are "free to consider all resources available" to make our *Erie* prediction (quotation omitted)); *cf.* Shawn J. Bayern, *Case Interpretation*, 36 Fla. St. U.L. Rev. 125, 145 (2009) (detailing how lower courts infer the intent of higher courts). Thus, while the government is plainly correct that neither the *Hughes* nor *Green* court "purported to opine on the meaning of 'person' in [§ 645]," Aplt. Br. at 14, we are persuaded that, based on the court's reasoning in those cases, they would reach the same outcome if presented with the question before us.

Second, the government points us to the statutory history of the crimes at issue in *Hughes* as evidence that, when the legislature intends to criminalize conduct against an unborn child, it does so explicitly. After *Hughes*, but before *Green*, Oklahoma's legislature amended its laws criminalizing homicide and assault and

11

battery with a dangerous weapon with intent to kill. *See* Okla. Stat. tit. 21, § 652 (assault and battery with a dangerous weapon); *id.* § 691 (homicide). The amended laws codified the outcome in *Hughes* by explicitly extending the statutes to include crimes against "an unborn child," but excluded certain acts related to legal abortions or medical procedures. *See id.* §§ 652, 691. The government argues that because the legislature has made no similar amendment to § 645, we "can reasonably conclude the Oklahoma Legislature intentionally amended the most serious violent felony statutes—homicide and assault and battery with a deadly weapon—to include the unborn as possible victims but declined [similarly to] amend a lesser violent felony like assault and battery with a dangerous weapon." Aple. Br. at 9.

While the government's argument is not without merit, we find it less persuasive than the Court of Criminal Appeals's nearly on-point caselaw. Based on the statutory history, an Oklahoma court might reasonably conclude that the legislature amended the more serious crimes primarily to exclude liability related to legal abortions and medical procedures, but that the Oklahoma legislature intended to leave intact broad liability for the less-serious § 645. Or perhaps a court could conclude that the Oklahoma legislature was responding narrowly and directly to *Hughes*, and not thinking about other criminal provisions at all. And in any event, the absence of the term "unborn" in Oklahoma's child neglect statute did not prevent the Court of Criminal Appeals from holding that it extended to unborn persons in *Green*, which was decided after the amendments to §§ 652 and 691.

And, more troublingly for our purposes, relying on this statutory history requires us to divine through indirect evidence (legislative silence) what we can determine based on direct evidence (the Court of Criminal Appeals's decisions in *Hughes* and *Green*).  That is always a fraught proposition.  *Cf. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) (stating that legislative "inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction" (quotation omitted)); *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 90 (2018) ("Silence in the legislative history, no matter how clanging, cannot defeat the better reading of the text and statutory context." (cleaned up)).  Deciding this case on the statutory history requires us to make assumptions both about the meaning of that silence, and about the persuasive value that the Court of Criminal Appeals would afford that silence.  We are not best positioned to muse about the meaning of legislative silence in interpreting Oklahoma law.  By contrast, deciding this case as we do today requires us only to extend the logic of two Court of Criminal Appeals cases that are nearly, but not perfectly, on point.  Framed in this way, we believe the "clear and principled course" to resolve this question is to apply the Court of Criminal Appeals's reasoning in *Hughes* and *Green* and hold that § 645 criminalizes the assault and battery with a dangerous weapon of an unborn person.  *Pino*, 507 F.3d at 1236.[2]

---

[2] The government further argues that Oklahoma's Uniform Jury Instructions militate for finding that § 645 does not apply to an unborn person.  The government's argument to that end tracks with its argument about statutory silence:  it asserts that because courts give a jury instruction that "a person/(human being) shall include an

13

## C.

Tying everything together, because § 645 criminalizes the assault and battery with a dangerous weapon of an unborn person, it is not a "crime of violence" under the Guidelines or the ACCA. This follows from our decision in *Adams* in which we held that if a state crime "allows a conviction . . . when the victim is a fetus," there is a "mismatch" between "the elements of the state crime and the guidelines' definition of a *crime of violence*." *Id.* at 1170–71 (emphasis in original). And, under the categorical approach, where such a mismatch exists, the state crime is not a "crime of violence" for Guidelines purposes, *id.*, or ACCA purposes, *see Mathis*, 579 U.S. at 509.

Finally, because § 645 convictions are not convictions for crimes of violence under the Guidelines or under the ACCA, the district court erred in calculating Singer's sentence to the extent it increased his sentence by classifying his § 645 convictions as crimes of violence.

---

unborn child" in §§ 652 and 691 cases, but omit that instruction for § 645 cases, then § 645 must not criminalize conduct against unborn people. Aple. Br. at 10 (quoting Okla. Unif. Instr. 4-57). It is true that "jury instructions provide useful guidance on the content of state law." *United States v. Hamilton*, 889 F.3d 688, 693 (10th Cir. 2018). However, this argument suffers the same pitfalls as the argument about statutory silence. First, the Uniform Jury Instructions are intended to track the elements of the underlying criminal statute. Thus, any silence in the Uniform Jury Instructions has only the same, but not greater, persuasive value as the silence in the statute. Second, and illustrative of the first point, the child neglect statute at issue in *Green* did not expressly include an "unborn child" in the relevant jury instructions. *See* Okla. Unif. Inst. 4-37.

**IV.**

For the foregoing reasons, we **REVERSE** the district court and **REMAND** for resentencing consistent with this opinion.

23-6120, *United States v. Singer*

**MATHESON**, Circuit Judge, concurring in the judgment.

I concur in the judgment based on the uncertain scope of Okla. Stat. tit. 21 § 645. *See United States v. Degeare*, 884 F.3d 1241, 1244 (10th Cir. 2018) (stating "we must be certain that the violent-felony moniker necessarily applies to a particular offense before we can treat that offense as an ACCA predicate." (quotations omitted)).